867 A.2d 1167

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DANIEL J. DALZIEL, DEFENDANT–APPELLANT.

Argued November 9, 2004—Decided March 3, 2005.

496

*Seon Jeong Lee,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Lora B. Glick,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

Justice LONG delivered the Opinion of the Court.

This appeal provides us with an opportunity to revisit the aggravating and mitigating factors prescribed in our Code of Criminal Justice and to assess the propriety of their use under the particular facts presented.

I

On March 1, 2002, 19–year–old defendant, Daniel Dalziel and his co-defendant Brad DeBlasi committed a robbery. DeBlasi was armed with a pellet gun, and Dalziel with an eighteen-inch wooden souvenir bat. The two concealed their faces with dark bandanas and went to the Larsen Shell Gas Station in Toms River. Villem Vainjoe, the station attendant, was watching television in the booth when Dalziel and DeBlasi arrived.

DeBlasi pointed the gun at Vainjoe and ordered him to hand over the money. Vainjoe, believing the gun was a toy, refused to comply, angering Dalziel. Dalziel then grabbed Vainjoe, put him in a headlock, and while asking for the money, hit the victim three times on the head and in the face with the bat. Ultimately, Vainjoe gave Dalziel $25 from his pocket and was released. Dalziel and DeBlasi took three packs of cigarettes and fled. The total value of the robbery proceeds was $39.

Vainjoe was treated for a head laceration and contusions to his head and face. The police questioned Dalziel and DeBlasi on the

day of the robbery and both denied participation. On March 21, 2002, DeBlasi, while being questioned for a second time, admitted that he and Dalziel robbed the station. Later, Dalziel also admitted to the robbery and to assaulting Vainjoe.

Dalziel and DeBlasi were indicted for first-degree armed robbery, *N.J.S.A.* 2C:15-1. Dalziel was also charged with second-degree aggravated assault, *N.J.S.A.* 2C:12-1(b)(1), second-degree possession of a weapon (baseball bat) for an unlawful purpose, *N.J.S.A.* 2C:39-4(d) and fourth-degree unlawful possession of a weapon. *N.J.S.A.* 2C:39-5(d). Dalziel agreed to plead guilty to first-degree robbery in exchange for truthful testimony against DeBlasi. In return, the State agreed to dismiss all other charges, not seek a sentence greater than the presumptive fifteen years with an 85% parole disqualifier and five years of parole supervision, and, allow Dalziel to argue for a lesser sentence. Thereafter, Dalziel pleaded guilty to the armed robbery charge.

On November 15, 2002, the trial judge sentenced Dalziel to a custodial term of fifteen-years subject to an 85% parole disqualifier and five years of parole supervision following release. *See N.J.S.A.* 2C:43-7.2. In so doing, the judge found four aggravating factors: (1) the risk that Dalziel would commit another crime, *N.J.S.A.* 2C:44-1(a)(3); (2) his prior criminal record and the seriousness of the current offense, *N.J.S.A.* 2C:44-1(a)(6); (3) a need to deter, *N.J.S.A.* 2C:44-1(a)(9); (4) and that Dalziel might view a lesser or minimum sentence merely as the "cost of doing business," *N.J.S.A.* 2C:44-1(a)(11). The judge found no mitigating factors and, considering the preponderance of aggravating over mitigating factors and the seriousness of the assault during the robbery, stated that, but for the terms of the plea agreement, he would have imposed a sentence greater than fifteen years.

On January 8, 2003, Dalziel filed a motion for a reduction or change of sentence pursuant to *Rule* 3:21-10. That motion was denied. Subsequently Dalziel filed a Notice of Appeal. The Appellate Division affirmed the judgment after a hearing on the Excessive Sentence Oral Argument (ESOA) calendar. We grant-

ed Dalziel's petition for certification, 180 *N.J.* 357, 851 *A.*2d 650 (2004), and now reverse.

## II

Dalziel argues that the trial judge incorrectly found and weighed aggravating and mitigating factors. More particularly, he contends that the "cost of doing business" aggravating factor (*N.J.S.A.* 2C:44–1(a)(11)) is inapplicable where the court is not balancing a non-custodial sentence against incarceration; that reliance on his lengthy "juvenile record" was unwarranted because he was not found delinquent in most instances; and that the trial judge did not cite a reason, specific to Dalziel, for invoking the deterrence factor.

He also claims that the trial judge erred in determining that no mitigating factors were present. In that respect, he points to his remorse and his post-sentence efforts at rehabilitation, including enrollment in college courses and vocational training; his participation in Alcoholics and Narcotics Anonymous; his efforts to obtain individual therapy and anger management and to focus on the effects his actions had on his victim; the fact that he has serious emotional problems; that those problems can be controlled with medication; that he has a stable environment waiting for him upon release; that his lengthy prison sentence would be an excessive hardship to his family; and that he was "willing to cooperate with law enforcement." According to Dalziel, if the proper aggravating and mitigating factors were weighed and considered, he would have received a lesser sentence.

The State counters globally that the test on review of a sentence is "whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." *State v. Ghertler*, 114 *N.J.* 383, 388, 555 *A.*2d 553 (1989). Applying that level of deference, the State contends that Dalziel's sentence was reasonable.

More specifically, the State urges that the "cost of doing business" aggravating factor may be applied by analogy in balanc-

ing a longer versus a shorter sentence and that, in any event, it was merely a shorthand way of impressing Dalziel with the seriousness of his crime. Regarding his prior history of criminality, the State points out that Dalziel's juvenile record includes five complaints in Florida and New Jersey, including sexual assault, theft by unlawful taking, receiving stolen property and criminal attempt; that Dalziel was adjudicated delinquent on four of the five charges, including sexual assault; that he was sentenced to two years probation and violated it after only seven months; and that as an adult, Dalziel was arrested four times before his most recent offense and was found guilty of criminal trespass and provoking breach of the peace.

In terms of deterrence, the State contends that the record clearly demonstrates that Dalziel's prior conduct coupled with his post-arrest psychiatric evaluation underscore that he is likely to re-offend and thus is a strong candidate for deterrence. Regarding excessive hardship on his family, the State notes that Dalziel has never resided with or supported them. Further, with respect to the "willingness to cooperate with law enforcement" mitigating factor, the State argues that Dalziel's cooperation was too little, too late.

Finally, the State submits that Dalziel may not advance the argument that the trial court erred in denying his motion for reconsideration of sentence because he failed to raise the issue at his ESOA proceeding. *R.* 2:10–2. On the merits, the State contends that the judge's denial of the motion was well-founded because Dalziel's post-sentence rehabilitation efforts, while commendable, do not merit a lessening of his sentence, imposed pursuant to a plea agreement.

### III

In sentencing, trial judges are given wide discretion so long as the sentence imposed is within the statutory framework. However, there are limits on that power.

As Justice O'Hern prescribed in *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984):

> First, we will always require that an exercise of discretion be based upon findings of fact that are grounded in competent, reasonably credible evidence. *State v. Johnson,* 42 *N.J.* 146, 162[, 199 *A.*2d 809] (1964); *see also N.J.S.A.* 2C:44-7.
>
> Second, we will always require that the factfinder apply correct legal principles in exercising its discretion. In *State in the Interest of C.A.H. and B.A.R.,* 89 *N.J.* 326[, 446 *A.*2d 93] (1982), we set aside a discretionary decision not to waive juvenile jurisdiction because the record showed that the "analytical step that was not taken below"—the balancing of juvenile rehabilitation against the protection of society— was required by the statutory framework guiding the decisionmaker. 89 *N.J.* at 344[, 446 *A.*2d 93]. *See also In re Trantino Parole Application,* 89 *N.J.* 347, 373[, 446 *A.*2d 104] (1982) (discretionary decision to parole without consideration of statutory standard concerning punitive aspects of sentence would be improper); *In re Polk License Revocation,* 90 *N.J.* 550[, 449 *A.*2d 7] (1982) (factfinding agency must use correct evidentiary standard in determining issues).
>
> Third, we will exercise that reserve of judicial power to modify sentences when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience. *State v. Whitaker,* 79 *N.J.* [503,] 512[, 401 *A.*2d 509 (1979) ]. We anticipate that we will not be required to invoke this judicial power frequently.
>
> [*Id.* at 363-64, 471 *A.*2d 370.]

That standard is one of great deference and "[j]udges who exercise discretion and comply with the principles of sentencing remain free from the fear of 'second guessing.'" *State v. Megargel,* 143 *N.J.* 484, 494, 673 *A.*2d 259 (1996)(quoting *Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370).

■ In terms of our function as an appellate court, we are analogously empowered to

> (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, *even though the court sentenced in accordance with the guidelines,* nevertheless the application of the guidelines to the facts of this case make the sentence clearly unreasonable so as to shock the judicial conscience.
>
> [*Roth, supra,* 95 *N.J.* at 364-65, 471 *A.*2d 370 (emphasis added).]

It follows that where the proper legal principles have not been applied or the facts found by the judge are not supported by the record, it is not for us to agree or disagree with the sentence; it is

for the judge to resentence, applying the correct sentencing guidelines to the facts of record.

The sentence in this case should be evaluated with those precepts in mind.

### IV

We turn first to aggravating factors.

### A.

*N.J.S.A.* 2C:44–1(a)(6) provides that the extent of a defendant's prior record shall be considered an aggravating factor. Despite Dalziel's protestations, we agree with the trial judge that Dalziel's uninterrupted history of criminality justified the finding of that aggravating factor. Moreover, it provided support for the judge's separate conclusions regarding the risk of reoffense and the need for deterrence. *N.J.S.A.* 2C:44–1(a)(3) and (9).

### B.

It is here that we part company from the trial judge. *N.J.S.A.* 2C:44–1(a)(11) provides that if "the imposition of a fine, penalty or order of restitution without also imposing a term of imprisonment would be perceived by the defendant or others merely as part of the cost of doing business, or as an acceptable contingent business or operating expense associated with the initial decision to resort to unlawful practices[,]" it is an aggravating factor. By its very terms, that provision is inapplicable unless the judge is balancing a non-custodial term against a prison sentence. *State v. Rivera,* 351 *N.J.Super.* 93, 110, 797 *A.*2d 175 (App.Div.2002), *aff'd o.b.,* 175 *N.J.* 612, 818 *A.*2d 1284 (2003).

Here, as in *Rivera,* Dalziel was faced with a presumptive prison term for his conviction of first-degree robbery under *N.J.S.A.* 2C:44–1(d) and no effort to overcome that presumption was made. Of that circumstance, the court in *Rivera* stated:

The trial judge cited *N.J.S.A.* 2C:44–1a(11) as an aggravating factor. That factor deals with situations where the imposition of a monetary penalty without a term of imprisonment "would be perceived by the defendant or others merely as part of the cost of doing business, or as an acceptable contingent business or operating expense associated with the initial decision to resort to unlawful practices." We do not view this factor as applicable unless the sentencing judge is balancing a non-custodial term as against a state prison sentence. Where, as in this case, defendant is convicted of a crime carrying a presumption of imprisonment, factor (11) is ordinarily inapplicable unless the court is being asked to overcome the presumption pursuant to *N.J.S.A.* 2C:44–1(f)(2). Other than in such an instance, factor (11) should not be utilized in sentencing for first and second degree crimes. [*Rivera, supra,* 351 *N.J.Super.* at 110, 797 *A.2d* 175.]

■ We agree, and reject the State's argument that that factor may be applied, by analogy, in situations where a shorter prison term may be deemed "the cost of doing business" in order "to impress a defendant with the seriousness of his crime." If the Legislature had intended such an application, the language of *N.J.S.A.* 2C:44–1(a)(11) would not have focused specifically on monetary sanctions. To the extent that *State v. Biancamano,* 284 *N.J.Super.* 654, 664, 666 *A.2d* 199 (App.Div.1995), *certif. denied,* 143 *N.J.* 516, 673 *A.2d* 275 (1996), and *State v. Ascencio,* 277 *N.J.Super.* 334, 337, 649 *A.2d* 891 (App.Div.1994), *certif. denied,* 140 *N.J.* 278, 658 *A.2d* 302 (1995), suggest otherwise, they are disapproved.

## V

■ Dalziel also challenges the trial judge's failure to find three mitigating factors. With respect to mitigating factors, some preliminary observations are in order. More particularly, the State argued in its brief that regardless of the evidence in the record, the trial judge has discretion to reject a mitigating factor altogether and thus, any error was necessarily harmless. We disagree.

Prior to 1983, the Criminal Code provided that in sentencing, a court "may properly consider" certain enumerated aggravating and mitigating factors. *N.J.S.A.* 2C:44–1(a) and (b) (amended 1983). In 1983, the Legislature changed the first sentence of *N.J.S.A.* 2C:44–1(a) (aggravating factors) from "may properly

consider" to "shall" consider. In the same initiative, it added § (g) to the statute, which reads:

> Imposition of Noncustodial Sentences in Certain Cases. If the court, in considering the aggravating factors set forth in subsection a., finds the aggravating factor in paragraph a.(2) or a.(12) and does not impose a custodial sentence, the court shall specifically place on the record the mitigating factors which justify the imposition of a noncustodial sentence.

At least one commentator has concluded that those amendments were linked such that they constituted a "half step toward a presumptive sentence of imprisonment where either the crime was committed in a particularly odious manner or a particularly vulnerable victim was involved." Cannel, *New Jersey Criminal Code Annotated,* comment 1 on *N.J.S.A.* 2C:44–1.

We believe that is the likely genesis of the differential language in the aggravating and mitigating sections of the statute. We recognize that some of our case law can be read to express the contrary view that the "shall consider" language in *N.J.S.A.* 2C:44–1(a) when juxtaposed against the "may consider" language in *N.J.S.A.* 2C:44–1(b) allows a court "discretion" to refuse to consider a mitigating factor that is supported by the record. *See State v. Sherman,* 367 *N.J.Super.* 324, 842 *A.*2d 859 (App.Div.), *certif. denied,* 180 *N.J.* 356, 851 *A.*2d 650 (2004); *State v. Soto,* 340 *N.J.Super.* 47, 773 *A.*2d 739 (App.Div.), *certif. denied,* 170 *N.J.* 209, 785 *A.*2d 438 (2001). We read those decisions as narrowly declaring that, under the facts presented, the failure to find a particular mitigating factor was not an abuse of discretion. *See Sherman, supra,* 367 *N.J.Super.* at 360, 842 *A.*2d 859 (stating "the evidence could support, but does not compel, the conclusion that any of the cited mitigating factors apply"); *Soto, supra,* 340 *N.J.Super.* at 72, 773 *A.*2d 739 (stating "the judge satisfactorily explained why he did not consider th[e] mitigating factor"). To the extent that they suggest a broader conclusion, contrary to our holding here, they are disapproved.

■ Indeed, during oral argument the State properly conceded that where mitigating factors are amply based in the record before the sentencing judge, they must be found. To be sure, they may

be accorded such weight as the judge determines is appropriate. That is a far cry, however, from suggesting that a judge may simply decline to take into account a mitigating factor that is fully supported by the evidence. Such a reading of the statute flies in the face of our sentencing scheme and of the well-established rule that aggravating and mitigating factors must be supported by credible evidence. *Roth, supra,* 95 *N.J.* at 356–64, 471 *A.*2d 370. A corollary of that rule is that where they are so supported, they must be part of the deliberative process. That is the backdrop for our inquiry.

### A.

Dalziel's first argument regarding mitigating factors—that his lengthy imprisonment will result in "excessive hardship on" him and his family within the meaning of *N.J.S.A.* 2C:44–1(b)(11)—requires little attention. Dalziel offered no evidence to show that the length of his sentence would be an "excessive hardship" on him. *N.J.S.A.* 2C:44–1(b)(11). Likewise, because he has never lived with or supported his fiancée and child, his incarceration could not constitute an excessive hardship on them.

### B.

Dalziel's next argument has substance. He urges that *N.J.S.A.* 2C:44–1(b)(12), "the willingness of the defendant to cooperate with law enforcement authorities," is "a strong mitigating factor" that should have been considered by the trial judge. *State v. Henry,* 323 *N.J.Super.* 157, 166, 732 *A.*2d 549 (App.Div.1999). Here, despite the fact that cooperation was part of the plea agreement, the trial judge did not consider that factor at all, perhaps because Dalziel did not squarely present it.

However, the trial judge is required to consider all of the aggravating and mitigating factors and to find those supported by the evidence. Here, cooperation with law enforcement, although late in the game, was part of the plea agreement, and therefore was rooted in the record. To be sure, the judge may determine

that voluntary cooperation by a defendant in the very early stages of an investigation is more significant than later cooperation; the only issue is the weight to be ascribed to that mitigating factor, not whether it exists in the first instance. The trial judge's failure to acknowledge Dalziel's cooperation, which was fully supported by the record, thus was error.

## VI

Because it is unclear to us how this case would have turned out if the trial judge had applied the proper standards, we reverse and remand the matter to him for resentencing. Nothing in this opinion should be viewed as tilting one way or the other regarding Dalziel's ultimate sentence. Our opinion merely reaffirms that he is entitled to the application of the correct sentencing guidelines and to consideration of aggravating and mitigating factors that are supported by the record.

## VII

The judgment of the Appellate Division is reversed. The matter is remanded to the trial judge for resentencing in light of the principles to which we have averted.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.