merit to the remainder of his arguments with respect to the court's charge.

Defendant complains of the denial of his request for free transcripts in connection with his attempt to appeal from orders of the Chancery Division. As we noted earlier, we only have jurisdiction over defendant's criminal appeal.

Having found no error, we reject defendant's invocation of the principle of cumulative error.

Defendant makes a generalized complaint, without any specific references, that the trial court placed improper restrictions on stand-by counsel. We decline to comb the record searching for any examples, indeed if any exist. Our review of the record indicates no instances in which defendant was not permitted to consult stand-by counsel when he wished to do so. Defendant was not entitled, however, to have stand-by counsel assume an active courtroom role in his defense.

Defendant's conviction is affirmed. The matter is remanded to the trial court for resentencing.

951 A.2d 1088

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. V.D., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 21, 2008—Decided July 23, 2008.

528

530

Before Judges WEFING, PARKER and KOBLITZ.

*Joyce Antila Phipps*, argued the cause for appellant.

*Carol M. Henderson*, Assistant Attorney General, argued the cause for respondent (*Anne Milgram*, Attorney General, attorney; *Ms. Henderson*, of counsel and on the brief).

The opinion of the court was delivered by

WEFING, P.J.A.D.

Defendant V.D. appeals from one provision of the judgment of conviction entered by the trial court. After reviewing the record in light of the contentions advanced on appeal, we reverse.

On April 2, 2006, the North Plainfield police were doing a routine check of automobile licenses and stopped a car defendant was driving that belonged to a friend of hers; a check of the license plate revealed an outstanding bench warrant for the vehicle's owner.

The police requested identification from defendant. She gave her name but was unable to produce a driver's license. She was placed under arrest for driving without a license. *N.J.S.A.* 39:3–10. She also received motor vehicle summonses for driving without a seatbelt, *N.J.S.A.* 39:3–76.2f, and failure to exhibit a driver's license, *N.J.S.A.* 39:3–29.

At police headquarters, officers discovered in her purse a social security card and a resident alien card, both in the name of Nixie R. Rodriguez. Defendant admitted to the police that she was not Nixie R. Rodriguez and that she had purchased the documents for $2,000.

On April 27, 2006, defendant was indicted on two counts of the fourth-degree crime of possession of a false document, *N.J.S.A.* 2C:21–2.1(d). Approximately six weeks later, defendant pled guilty to both counts of the indictment, as well as to driving without a license. In conjunction with that, defendant executed a plea form. In response to the direction to list any sentence the prosecutor had agreed to recommend was written the following: "Term of probation, no incarceration, 25 hours of community service." Defendant also acknowledged on the form that she understood that she could be deported as a result of her conviction.

When defendant appeared before the trial court to enter her guilty plea, the trial court queried her about her understanding of the possible penal consequences of her plea.

Q. This plea agreement is between you and the Prosecutor.

Do you understand that the Prosecutor is promising to make an argument with respect to your sentencing that calls for a term of probation, no incarceration, 25 hours of community service?

But I am not bound by the State's argument or by what your attorney argues. I could give you a stiffer—a harsher sentence.

Do you understand that?

A. Yes.

Q. If I chose to reject the plea agreement and to give you a harsher sentence I would first tell Mr. Schwartz. He would tell you and at that point you could withdraw your guilty plea before you are sentenced.

Do you understand that?

A. Yes, I do understand.

On November 17, 2006, defendant appeared for sentencing before a judge other than the one before whom she had entered her guilty plea. The presentence report prepared in conjunction with defendant's sentencing noted that defendant was in the United States illegally. She had legally entered the country in 2001 from Argentina but had overstayed her permissible time limit.

Defendant, who is not married, has three children in Argentina who reside with her mother. Defendant sends money to her mother to support the children. In addition, she has one child in New Jersey, for whom she receives monthly child support of $500. At the time the presentence report was prepared, in October 2006, the children in Argentina were seventeen, fifteen and fourteen years of age, and the child in New Jersey was four years of age.

The sentencing judge noted as aggravating factors the risk that defendant would commit another offense, *N.J.S.A.* 2C:44–1(a)(3); the need for deterrence, *N.J.S.A.* 2C:44–1(a)(9); and that the offense involved fraudulent or deceptive practices against the government, *N.J.S.A.* 2C:44–1(a)(10).[1] As mitigating factors, the sentencing judge noted that defendant did not contemplate that her conduct would cause serious harm, *N.J.S.A.* 2C:44–1(b)(2); that she would participate in a program of community service, *N.J.S.A.* 2C:44–1(b)(6); and that she was likely to respond affirmatively to probationary treatment, *N.J.S.A.* 2C:44–1(b)(10). The sentencing judge deemed the aggravating and mitigating factors to be in balance and said he would accept the plea agreement.

He directed that defendant serve one year on probation, perform twenty-five hours of community service and pay a fine of $250, as well as a probation supervision fee of $10 per month and

---

[1] Although not raised by the parties, the applicability of this aggravating factor is not immediately apparent. *N.J.S.A.* 2C:44–1(a)(10) refers to "fraudulent or deceptive practices committed against any department or division of *State* government" (emphasis added).

the appropriate penalties and assessments. Finally, the sentencing judge directed defendant to "notify the Bureau of Immigration and Customs Enforcement ["ICE"] of this conviction within ninety days." The judge noted that one result of such notification could be defendant's deportation.

In this appeal, defendant challenges only the imposition of this requirement as a condition of her probation. We understand that defendant has satisfactorily completed all of the remaining terms and conditions of her probation and that this requirement is the only thing standing in the way of her being satisfactorily discharged from probation. She raises the following arguments for our consideration:

It is not permissible for a judge to require as part of the conditions of probation for a person to present herself to ICE and thus subject herself to removal proceedings when the underlying offense is not a deportable offense.

Requiring appellant to report to ICE violates the Fifth Amendment to the U.S. Constitution.

The "self-reporting" requirement is not part of the function of probation.

The requirement that defendant notify ICE of her conviction had not previously been the subject of discussion and had not been requested by the prosecutor. When the sentencing judge finished with the pronouncement of defendant's sentence, the following colloquy between defense counsel and the sentencing judge took place:

MR. SCHWARTZ: Your Honor, if I may address the court? The issue with regard to the notification of Bureau of Immigration my client has the ability to make application which I don't want to go into the reasons here—there are federal issues, not state issues—and will be seeking or already has put in a petition. I would ask that that be notification that would be acceptable to the court.

Obviously, that is notification that will be dealt with by the Federal Court.

THE COURT: Does that federal notification include this sentence?

MR. SCHWARTZ: I don't know if the court is aware of the immigration process, but they do review as part of any application a criminal history. So they do review it.

THE COURT: She's going to have to remind them. I am not going to abate the notification requirement.

MR. SCHWARTZ: That's a federal issue and I believe that is something they review as pro forma, as the court does review an adult presentence report at sentencing. It is required as part of the petition that the Immigration Naturaliza-

tion Service, which is now Homeland Security, reviews the criminal history of the person up to the minute with these applications.

So, therefore, that is a form of notification to Immigration.

THE COURT: I understand that.

MR. SCHWARTZ: I wanted that to be clear that that is on the record that she's going to do it and that would be acceptable to the court.

THE COURT: No, that's where we differ. Probation is a State issue. She with the Probation Division is going to notify the Immigration and Customs Enforcement Bureau of this conviction. Whether it is redundant to any other notice she may have given, so be it. But she's going to do it.

Before proceeding to analyze the validity of this condition, we are compelled to note certain problems with the manner in which defendant's plea agreement was prepared and presented to the court. Defendant was indicted and pled guilty to two fourth-degree offenses. The maximum penalty for a fourth-degree offense is eighteen months in prison. *N.J.S.A.* 2C:43–6(a)(4). If plaintiff were to receive consecutive terms, the maximum period of her incarceration would be three years. The plea forms, however, indicated that defendant faced a potential sentence of three years on each count, with a potential maximum sentence of six years.[2] The error with respect to defendant's sentence exposure was repeated by the judge who presided over the plea proceedings. In the course of querying defendant about her understanding of the plea agreement, the judge posed the following question to defendant:

> It is two fourth-degree offenses. If I were going to sentence you to the maximum and do so consecutively, that means I could sentence you to a total of six years in State Prison and fine you a total of $5500. Do you understand that that is your outside exposure here?

To this, defendant responded, "Yes."

 It is critical that a defendant be accurately informed about her potential exposure in order to come to a reasoned decision whether to plead guilty or go to trial.

---

[2] There is no indication in this record that defendant had any prior criminal involvement. Accordingly, there was a presumption that she would not receive a custodial sentence. *N.J.S.A.* 2C:44–1(e).

> [W]here the responsible arms of the judicial and law enforcement establishment, together with defendant's own counsel, have misinformed him as to a material element of a plea negotiation, which the defendant has relied thereon in entering his plea ... it would be manifestly unjust to hold the defendant to his plea. [*State v. Nichols*, 71 *N.J.* 358, 361, 365 *A.*2d 467 (1976) (citing *R.* 3:21–1).]

A defendant's potential exposure is a material element of the plea negotiation process and a defendant who has been misinformed in this regard should be permitted to withdraw his plea. *Id.* at 360–61, 365 *A.*2d 467.

We turn now to the issue of whether directing a defendant to report her conviction to ICE is a proper condition of probation, first in this particular matter, and then in general. When a trial court is called upon to sentence a defendant who has entered a negotiated plea of guilty, it must either sentence defendant in accordance with the negotiated terms or, if it is unable to do so, reject the plea agreement. "[T]he terms and conditions of a plea bargain must be meticulously carried out." *State v. Jones,* 66 *N.J.* 524, 525–26, 333 *A.*2d 529 (1975). A sentencing court may not impose a sentence greater than that which a prosecutor has agreed to recommend in connection with a defendant's entry of a plea of guilty. *State v. Warren,* 115 *N.J.* 433, 437, 558 *A.*2d 1312 (1989). If the sentencing court is convinced that the sentence envisioned by the plea bargain is inappropriate, the court may vacate the plea or permit the defendant to withdraw the guilty plea. *R.* 3:9–3(e).

The record is barren of any reference to the possibility of notification to ICE as a special condition of defendant's probation prior to the court imposing sentence. As we noted earlier, the State had not made any request that such a term be included in defendant's sentence. With respect to the propriety of imposing such a condition without any prior notification to a defendant, we find *State v. Saperstein,* 202 *N.J.Super.* 478, 495 *A.*2d 454 (App. Div.1985), to be instructive. The defendant in that case entered a negotiated plea of guilty to one count of bribery, *N.J.S.A.* 2C:27–2, and one count of conspiracy to commit theft by deception in an amount over $75,000, *N.J.S.A.* 2C:5–2; *N.J.S.A.* 2C:20–4; *N.J.S.A.*

2C:20–2(b)(1). *Id.* at 481, 495 *A.*2d 454. When the trial court took the defendant's guilty plea, it explained that defendant could receive concurrent sentences of five years, with a two-and-one-half-year period of parole ineligibility, or, if he were placed on probation and committed a subsequent violation, could then receive such a custodial sentence. *Ibid.* At sentencing, the trial court placed defendant on probation for five years and included, as a special condition of that probation, that defendant make restitution in the amount of $150,000. On appeal, we agreed with defendant's contention that the requirement of such restitution was beyond the contemplation of the plea agreement.

> We do not suggest that every obligation to be imposed as a condition of probation must be forecast and explained at the entry of the plea; many such obligations can fairly be said to be reasonably contemplated conditions of any probationary sentence. . . . But a restitution obligation of the magnitude ordered here cannot be characterized as one which defendant should reasonably have anticipated as a condition of a probationary sentence.

> [*Id.* at 483, 495 *A.*2d 454.]

Similarly, we are convinced that the condition that defendant notify ICE of her conviction is not one that she "should reasonably have anticipated as a condition of a probationary sentence." At oral argument, neither attorney could inform the court of another instance in which a defendant had been ordered to advise ICE of a conviction. At a bare minimum, defendant must be afforded an opportunity to move for resentencing. *State v. Kovack,* 91 *N.J.* 476, 485, 453 *A.*2d 521 (1982).

We are, however, persuaded that the condition itself is inappropriate from the outset, and we thus exercise our original jurisdiction to strike it. We reach this conclusion for several reasons. We do so even in the face of the principle that appellate courts may not substitute their judgment for that of the trial court with respect to sentencing. *State v. O'Donnell,* 117 *N.J.* 210, 215, 564 *A.*2d 1202 (1989); *State v. Roth,* 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984). Trial judges have wide discretion in sentencing, so long as the sentence is within the statutory framework. *State v. Dalziel,*

182 *N.J.* 494, 500, 867 *A.*2d 1167 (2005). The standard of review is one of "great deference." *Id.* at 501, 867 A.2d 1167.

We reach our conclusion for several reasons. In our judgment, the court's directive overstepped the court's authority. When a court becomes aware that the parties appearing before it are, or may be, involved in illegal conduct, it has an ethical obligation to act. *Sheridan v. Sheridan,* 247 *N.J.Super.* 552, 589 *A.*2d 1067 (Ch.Div.1990), is illustrative. That was a matrimonial matter in which the trial court became aware that the parties had engaged in the intentional underreporting of their income. *Id.* at 566, 589 *A.*2d 1067. While the court was compelled to act upon that information, it met that duty by notifying the appropriate authorities, not compelling the parties to do so. It was then up to that office to make the discretionary determination of how to proceed. Here, the prosecutor's office was fully aware of defendant's immigration status and had the undoubted ability to notify ICE if it deemed it appropriate to do so.

We set forth earlier in this opinion a colloquy between defense counsel and the sentencing court from which it is apparent that defendant was in the process of attempting to regularize her immigration status. From the state of the record presented to us, it is reasonable to infer that the prosecutor's office made a discretionary determination to permit defendant to proceed on that course, at least at that juncture. By directing defendant herself to notify ICE, the trial court disregarded the inherent authority of the prosecutor's office as to how to best exercise its discretion.

We find guidance, moreover, in Administrative Directive No. 11–07, even though the Directive was not in effect at the time of defendant's sentencing. This Directive states:

If the court discovers during the pendency of an indictable criminal or DWI matter that a defendant may be an undocumented immigrant, but defendant is not identified as such in the complaint, the court should forward this information to the prosecutor in the case. The prosecutor then may inform ICE, in accordance with the Attorney General's Law Enforcement Directive. Note that since the Attorney General's Law Enforcement Directive requires law enforcement to contact ICE

only in indictable and DWI cases, the Judiciary should limit its notification to the prosecutor to such cases.

The special condition of probation imposed by the trial court does not comply with the procedure set forth in this Directive.

Further, we express concern about the policy ramifications which could flow from a decision that a court could require a party to report to ICE. The judiciary comes into contact with undocumented aliens in many contexts, some of the most sensitive of which occur in proceedings in the Family Part. Courts hearing matters such as domestic violence, paternity, or child support enforcement claims may often become aware that one or more of the involved parties is an undocumented alien. A determination that the court has an independent authority to compel a litigant to report directly to ICE could have significant ramifications upon the judiciary's ability to protect those who turn to it seeking justice.

Finally, we deem it appropriate to note, for the sake of completeness, that we do not rest our analysis or conclusions on the assertion that the trial court's directive constituted a violation of the Fifth Amendment. Federal case law is clear that deportation is in the nature of a civil proceeding and not punishment for unlawful conduct. *Immigration & Naturalization Service v. Lopez–Mendoza*, 468 *U.S.* 1032, 1038, 104 *S.Ct.* 3479, 3483, 82 *L.Ed.*2d 778, 785 (1984). Thus the Fifth Amendment is not triggered by the possibility of deportation.

We therefore reverse that portion of the Judgment of Conviction that imposed as a special condition of defendant's probation that she contact ICE and notify it of her conviction.

Reversed and remanded for entry of an amended Judgment of Conviction in accordance with this opinion.