**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5063-15T3

STEPHEN K. LEE,

    Plaintiff-Appellant,

v.

XIAOPING LI,

    Defendant-Respondent.

_____

SHUANG QI SUN,

    Intervenor-Respondent.

_____

          Submitted February 12, 2018 – Decided September 4, 2018

          Before Judges Messano, Accurso and Vernoia.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Somerset
          County, Docket No. FM-18-0659-13.

          Steven A. Caputo, attorney for appellant
          Stephen K. Lee.

          Respondent Xiaoping Li has not filed a
          brief.

          Wang, Gao & Associates, PC, attorneys for
          respondent Shuang Qi Sun (Heng Wang and
          Jeremy J. Jackson, on the brief).

PER CURIAM

This divorce action became, in essence, a contest between plaintiff Stephen Lee and an intervenor, Shuang Qi Sun, a businessman from China, who obtained a default judgment of approximately $1,040,000[1] against Lee's wife, defendant Xiaoping Li, but whose complaint against plaintiff was dismissed on summary judgment. After defendant defaulted in the divorce, the trial court denied equitable distribution to both plaintiff and defendant based on its finding that defendant acquired the marital home and an apartment in Beijing through misuse of money provided by intervenor for investment, and that the parties transferred another property from plaintiff to defendant to avoid its inclusion in plaintiff's bankruptcy. The court granted intervenor power of attorney to sell all three properties to satisfy his default judgment against defendant and allowed him to retain any surplus based on its finding that neither defendant nor plaintiff was "entitled to equitable distribution from those assets and these sums represent

_____

[1] It is impossible to be more precise on this record. The appendix does not contain a judgment entered on the Civil Judgment and Order Docket, see R. 4:101, and the order dated October 30, 2015 granting intervenor judgment by default, included in the appendix, awards intervenor $900,000 and ¥919,091 (RMB). In its opinion from the bench, the court, using an online calculator, noted that latter sum as the equivalent of $139,703.

intervenor's lost profits on amounts given to the defendant, in any event."

Plaintiff appeals from those aspects of the final judgment of divorce denying him equitable distribution, claiming, among other things, that the court failed to accord him the benefit of the summary judgment he obtained dismissing intervenor's complaint and overlooked evidence in the record pointing to intervenor's own unclean hands. Defendant has not contested plaintiff's appeal. Intervenor opposes the relief, arguing plaintiff is "trying to raise new issues on appeal" and "waived his right to seek further discovery by moving for default judgment against defendant."

Because the unusual procedural posture of this case deprived plaintiff of the benefit of his judgment dismissing intervenor's complaint and did not afford him the opportunity to challenge intervenor's allegedly "unclean hands," we vacate the court's ruling on equitable distribution and remand for reconsideration.

Although our review has been somewhat hampered by the parties' failure to include all parts of the record essential to a proper consideration of the issues, see R. 2:6-1(a)(1), we have been able to piece together what we believe to be the essential facts and procedural history. Plaintiff filed for

divorce in January 2013. Defendant filed a timely answer and counterclaim, and her counsel apparently first raised the specter of a potential claim by intervenor at the early settlement panel.

Intervenor thereafter obtained leave to participate in the parties' divorce action.[2] He filed a complaint against both defendant and plaintiff alleging defendant enticed him to enter "a business venture" in 2007 claiming "she had experience operating a furniture and carpet business" and "with her United States permanent resident status, that she was able to acquire commercial property easily." Intervenor claimed he and defendant entered into an "oral agreement" in China to start a new company in the United States of which they would be the only two shareholders. Intervenor was to own fifty-one percent and defendant forty-nine percent and each was to contribute capital in proportion to his or her ownership interest "towards the purchase of commercial property for the purpose of operating the new company." Intervenor was to serve as chairman of the board and defendant was to be in charge of business operations,

---

[2] There is no indication in the record on appeal as to whether defendant opposed the application. Although plaintiff's counsel claimed intervenor never served him with the motion to intervene, he ultimately acquiesced in the filing after "the judge . . . suggested there was no way this was going to get resolved without it."

providing intervenor with monthly reports on the company's operations and finances.

Intervenor also alleged in his complaint that the company was incorporated in New Jersey in April 2007 and that he wired $300,000 to defendant's account in a Chinese bank in July 2007 pursuant to the parties' agreement.[3] The complaint further alleged that intervenor "or his agents" purchased ¥918,991.19 (RMB) in carpet and furniture for the company in China in July 2007 at defendant's request, and that intervenor, using twelve different individuals as surrogates, wired $600,000 to defendant in sums of $50,000 each between August and October of 2007. The complaint alleged the company never got off the ground, and defendant never "purchased any commercial property to facilitate [its] operation[s]." Intervenor pled counts alleging a constructive trust, breach of contract and unjust enrichment against both defendant and plaintiff as well as a fraud count against defendant.

Following intervenor's entry into the case in late September 2013, the parties appeared for a case management conference, at which defendant represented herself, having dismissed her counsel. On the record at that conference,

---

[3] A translation of the fund transfer document in the appendix, however, lists the funds as a loan.

defendant told the judge she was "just wondering if they said the marriage residential, that's really belong to us, where does the money come from?" Defendant proceeded to explain to the court that intervenor wired money to her to build a furniture business but the economy in 2008 made that impossible. She explained "they" gave up on that and bought the house out of foreclosure with the idea of flipping it. She claimed when the house did not sell, she and plaintiff moved there "to maintain the house." She further claimed intervenor agreed they would sell it when the market improved. She told the court that just as she was readying the property to put it on the market, plaintiff filed for divorce.

Defendant does not appear to have meaningfully participated in the case after that conference. She never appeared for deposition, and the court struck her pleadings, first on intervenor's motion in November 2014 and then on plaintiff's motion in January 2015.

Plaintiff obtained summary judgment dismissing intervenor's complaint against him in May 2015. The court found intervenor presented no proof that plaintiff knew where the funds to purchase the marital residence had come from or had any involvement in intervenor's dealings with defendant. Although plaintiff acknowledged meeting intervenor with defendant, the

court noted that intervenor and defendant conducted their business in Chinese, which plaintiff does not speak or understand. Another judge, the same one who entered the judgment of divorce, subsequently granted intervenor's motion for entry of default judgment against defendant on the papers.

When plaintiff appeared for the default hearing on the divorce, defendant's third lawyer on the case made a motion to withdraw on the record after defendant advised the court that she would not appear. Although not objecting to counsel's withdrawal, plaintiff's counsel vehemently objected to his client being cross-examined by defendant's counsel in light of her unwillingness to participate in discovery or be deposed.

Plaintiff's counsel represented that defendant failed to disclose her ownership of the apartment in Beijing and between $50,000 to $60,000 of income on her CIS, and that plaintiff had not been able to locate two other properties defendant acquired in China during the parties' marriage. He claimed permitting defendant's counsel to do anything other than observe, simply magnified the prejudice plaintiff had already suffered as a result of defendant's contumacious conduct. Although the court advised defendant's counsel it would grant his motion to be relieved, counsel determined ultimately to stay "and participate on [defendant's] behalf" after his client sent him an email

A-5063-15T3

"releas[ing] [him] from any liability for anything that happens today."

At the default hearing, plaintiff testified at length about the parties' thirteen-year marriage, what little he knew of their finances, his paying over the entirety of his social security check every month to defendant, defendant's bullying behavior toward him, her use of the letterhead of a defunct business he formerly maintained to issue fraudulent invitations to Chinese citizens, including intervenor, to allow them to obtain travel visas to the United States, and his care of their daughter then in sixth grade. He was vigorously cross-examined by counsel for intervenor and counsel for defendant, especially over defendant's purchase of plaintiff's South Plainfield home after the birth of their daughter in 2002 but approximately nine months prior to their marriage in 2004.

Plaintiff testified the house was in foreclosure and there was an outstanding tax sale certificate. Although the testimony was far from clear about how much plaintiff owed on the mortgage when he sold the property, he eventually testified he owed $110,000 on the mortgage, that defendant purchased the property for $115,000, although the property was worth $300,000, and he did not declare an expected interest in the property when he filed for bankruptcy in August 2005, despite an oral agreement

with defendant that she would put his name on the deed after he completed his bankruptcy, which she reneged on.

Plaintiff sought fifty percent of the marital home, valued by his expert between $750,000 and $780,000 and fifty percent of the South Plainfield property, which his expert testified he would list at $310,000, expecting a sale price between $298,000 and $300,000. As to the property in Beijing, an apartment valued at $1,953,000, plaintiff offered to have his share of the property placed in trust for their daughter's education.[4] The two New Jersey properties are titled solely in defendant's name, as apparently is the apartment in Beijing.

Defendant's counsel argued in summation that the South Plainfield property was a pre-marital asset not subject to equitable distribution. Counsel conceded plaintiff was entitled to a share of the marital home but argued giving him "fifty percent of everything with the million dollar judgment"

---

[4] Although an appraisal, of sorts, of this property translated from the Chinese and listing defendant as the owner was admitted in evidence, no one produced a deed, and there was no testimony as to when defendant purchased the property, purportedly built in 2005, or for how much. The appraisal does not list a mortgage encumbering the property. Plaintiff testified to sending a $400,000 wire transfer at defendant's direction to an account in China in her name in January 2010, but had no knowledge of where the money came from or what it was to be used for. There was no evidence linking that transfer to this property.

intervenor had against her would result in "a situation where the net to . . . [defendant] is going to work out to be zero or around there."

Intervenor's counsel argued that "plaintiff should be jointly liable for the repayment of all monies paid on that house." Acknowledging plaintiff succeeded in having intervenor's complaint against him dismissed in its entirety, counsel argued "the court still can hold him liable under the theory of marital liabilities." He claimed plaintiff "kept himself willfully ignorant of his wife's dealings" with intervenor and suggested based on their "past collu[sion] to hide assets from a trustee in a bankruptcy proceeding" that the two were working together "in an attempt to try to do the same thing here." Intervenor asked that the court transfer title to the marital home to him or alternatively that all the properties be liquidated, the proceeds placed in counsel's or the court's trust account to permit satisfaction of the judgment and distribution of the remaining funds as the court would order.

Counsel for plaintiff reminded the court that another judge had already ruled that plaintiff "had no liability whatsoever" for the sums owed intervenor, and that the court could not accept intervenor's argument and "procedurally or equitably . . . reinstate[s] those claims and hold [plaintiff] liable for

this after [plaintiff] already won the motion for summary judgment." Although taking no "position as to what [plaintiff and defendant] were trying to do" with regard to the South Plainfield property in plaintiff's bankruptcy, counsel argued defendant received a windfall in the conveyance, a portion of which should equitably be awarded to plaintiff. Finally, plaintiff's counsel argued that defendant should not be rewarded for her successful efforts in preventing plaintiff from discovering her assets in defiance of multiple court orders.

Following summations, the court questioned the lawyers for intervenor on the ability to execute on the property in Beijing should the court "address liquidation of that property to satisfy a judgment." Counsel responded that they had been in contact with intervenor's counsel in China, and "[a]ccording to her, it's extremely difficult to get it liquidated unless [defendant] is physically there to sell that property. Things in China work very differently." Counsel expressed the view, again based on his discussions with his counterpart in China, that "to the extent that that property can be turned into money, I think it's not going to happen right away[,] and I doubt if it will ever happen at all. . . . [I]t's generally very difficult to enforce a U.S. judgment in China."

Two weeks after the hearing, the judge put his opinion on the record. The judge found plaintiff a credible witness, ignorant of his wife's misdeeds. Based on plaintiff's testimony, the court found the marital standard of living for the family was $6358 per month, and that plaintiff was without property or savings other than the $1000 per month he received in social security, $300 of which he received on behalf of the parties' daughter. In light of the considerable difference in the parties' incomes and ages, plaintiff was sixty-eight when the court entered judgment and defendant fifty-four, the court awarded plaintiff term alimony and required no child support beyond the $300 derivative payment from social security.

Determining, however, that the marital property and the property in Beijing[5] were "illegally acquired and the court can only distribute assets that were legally acquired," relying on

---

[5] Although defendant admitted in her CIS filed with the court that she used a portion of the funds supplied by intervenor to purchase the marital property, prompting the court's finding in the default judgment entered in favor of intervenor that defendant used $636,000 of the $900,000 wired to her by intervenor for that purpose, there is nothing in the record linking the funds used to purchase the Beijing apartment to the $264,000 of intervenor's funds remaining after defendant's purchase of the marital residence in 2008. The trial judge found he could not determine where the funds came from for that purchase. The court found only that there was no evidence that defendant "had the means" to acquire either the marital residence "or the China property, except by way of ill-gotten gains, namely, by using the money given to her by intervenor."

Sheridan v. Sheridan, 247 N.J. Super. 552, 562 (Ch. Div. 1990), the court declined to make any equitable distribution of those assets to the parties and instead ruled "intervenor will be permitted to satisfy his judgment from these assets."

The court ruled the South Plainfield property "stands on similar but slightly different footing." Finding "the parties operated to hide [the] asset from the bankruptcy trustee," the court determined "to notify the United States bankruptcy trustee of plaintiff's admission to the fraud on the record." The court further ordered:

> Until the bankruptcy trustee notifies this Court of his or her intent to act or not, vis a vis this asset, the asset shall not be equitably distributed or liquidated. If the trustee declines to act, the intervenor shall be permitted to liquidate the asset to the extent his judgment has not been satisfied from the other assets.
>
> The intervenor is granted power of attorney, therefore, to liquidate the [marital residence] to satisfy his judgment. Next, the intervenor is granted power of attorney to liquidate the China property to satisfy his judgment. Third, and in this order, if the bankruptcy trustee declines to act, the intervenor will then be permitted to liquidate the [South Plainfield] property, to the extent that the intervenor's judgment is not satisfied from the [marital residence] and the China property.
>
> The intervenor shall satisfy the [attorney fee] debt owed by defendant from

13

the [South Plainfield] property, as well as any counsel fees owed to [plaintiff's counsel] from that asset. If after the liquidation of the China property and the [marital residence], there are funds left, the intervenor shall keep them, because the plaintiff and the defendant are not entitled to equitable distribution from these assets and these sums represent intervenor's lost profits on amounts given to the defendant, in any event.

Plaintiff appeals, arguing, among other things, that the court erred in ignoring evidence of intervenor's unclean hands, in awarding intervenor approximately $3,000,000 in assets to satisfy a judgment against defendant for approximately $1,100,000, in making intervenor defendant's attorney in fact to liquidate those assets and in reporting the parties to the bankruptcy trustee.

Intervenor counters that plaintiff is "trying to raise new issues on appeal," and that we should disregard plaintiff's allegations of money laundering and decline to apply the defense of "in pari delicto" as neither was ever raised in the trial court. Intervenor contends the judgment was fair and equitable because plaintiff was unjustly enriched by defendant's fraudulent conduct. Intervenor contends the court's dismissal of all his claims against plaintiff, including those for unjust enrichment, is "not dispositive of a finding of unclean hands"

because "[t]he doctrine of unclean hands is a legal principle, not a cause of action."

We ordinarily accord deference to the Family Part based on its special jurisdiction and expertise. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). We defer to the court's factual findings if "supported by adequate, substantial, and credible evidence in the record." D.A. v. R.C., 438 N.J. Super. 431, 451 (App. Div. 2014). We owe no deference, however, to rulings not based on witness testimony or credibility findings. Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000). Our review of questions of law is, of course, de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The law is well settled that "[a]court of equity can never allow itself to become an instrument of injustice." Rolnick v. Rolnick, 262 N.J. Super. 343, 362 (App. Div. 1993) (quoting Sheridan, 247 N.J. Super. at 556). "Thus, where the bad faith, fraud or unconscionable acts of a petitioner form the basis of his lawsuit, equity will deny him its remedies." Ibid. (quoting Sheridan, 247 N.J. Super. at 556). Courts of equity applying the maxim of unclean hands must, of course, "use just discretion in determining under what circumstances, to what extent and what policy reasons will constitute cause to banish a litigant or to

15

bar her relief." Sheridan, 247 N.J. Super. at 569. The Supreme Court has long acknowledged "[i]t is the effect of the inequitable conduct on the total transaction which is determinative whether the maxim shall or shall not be applied. Facades of the problem should not be examined piecemeal." Untermann v. Untermann, 19 N.J. 507, 518 (1955).

We begin our analysis by making clear we have no quarrel with the court's referral of plaintiff's failure to have disclosed his expected interest in the South Plainfield property in his 2005 bankruptcy to the bankruptcy trustee. We reject plaintiff's arguments that the language barrier to clear testimony and the uncertainty as to whether plaintiff had an obligation to report his expectation as to that property, which was ultimately not fulfilled in any event, should have stayed the judge's hand.

"When a court becomes aware that the parties appearing before it are, or may be, involved in illegal conduct, it has an ethical obligation to act." State v. V.D., 401 N.J. Super. 527, 537 (App. Div. 2008). Although we have not hesitated to act ourselves when we believe a judge has overstepped his bounds in that regard, see id. at 538 (reversing special condition of probation requiring defendant contact immigration officials to notify them of her conviction), we have no cause to do so here.

It is up to the bankruptcy trustee to determine whether plaintiff had an obligation to disclose whatever interest he had in the South Plainfield property and, if so, whether the interest would have or should be abandoned. See id. at 537.

We are not so sanguine, however, about the court's disposition of that asset in the event the trustee determined to abandon it,[6] or the court's conclusion that plaintiff should forfeit any interest in that property or the other two properties owned by defendant without any inquiry as to whether intervenor was entitled to equitable relief vis-á-vis plaintiff. In other words, it does not appear the judge assessed intervenor's conduct with the same gimlet eye with which it appraised plaintiff's.

Plaintiff testified that defendant used old letterhead of his to make up phony invitations to Chinese citizens, including intervenor, permitting them to obtain visas to travel to New Jersey to conduct business, and to his belief that intervenor violated Chinese law in transferring $900,000 out of China to defendant. Intervenor apparently admitted in a deposition, not

---

[6]   Indeed, even under the trial court's expansive view of Sheridan, we can discern no reason why the South Plainfield property, to the extent the court determined it a marital asset, would not be subject to equitable distribution should the bankruptcy trustee determine to abandon it.

included in the appendix, that he transferred $600,000 of that amount in sums of $50,000 through twelve proxies to avoid detection and that doing so was a violation of Chinese rules, or, as plaintiff claims, currency regulations.

There are other facts apparent on the record that raise further questions as to intervenor's good faith in this matter. They include:  the absence of any written agreement between intervenor and defendant, two individuals, seemingly not well-acquainted; intervenor's having visited defendant at the marital residence in 2008; intervenor's almost six-year delay in instituting suit to recover the money he claimed defendant misappropriated; and his having done so only after plaintiff filed his complaint for divorce.  Indeed, there is nothing in the record on appeal indicating how intervenor learned of the parties' divorce action.

None of those facts, either singly or in combination, proves, of course, plaintiff's allegations that defendant and intervenor were engaged in a money laundering scheme or that they colluded to deprive plaintiff of his interest in the marital property.  But we reject intervenor's assertion that we should disregard plaintiff's claims of intervenor's inequitable conduct because they were not raised in the trial court — for the simple reason that intervenor does not explain when

plaintiff should have asserted such claims, or, indeed, had the opportunity to do so. See State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)) ("[O]ur appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.") (emphasis added).

The record makes very apparent, as two judges found, that plaintiff knew absolutely nothing about defendant's dealings with intervenor. Plaintiff secured summary judgment dismissing intervenor's complaint against him for a constructive trust, breach of contract and unjust enrichment based on intervenor's inability to marshal any evidence of plaintiff's knowledge of defendant's business affairs. Plaintiff had no need, or likely ability, to establish anything beyond the absence of any evidence against him in intervenor's suit. Further, the trial judge granted intervenor's motion for default judgment against defendant in that suit on the papers. Although intervenor's counsel participated in the default hearing, we see no reason for plaintiff to have been prepared to mount a defense to intervenor's claims against him at that time in light of the summary judgment he had already secured.

Intervenor's argument that plaintiff chose to enter default against defendant instead of pursuing discovery ignores the multitude of discovery and case management orders defendant defied in the divorce action, which was over three years old at the time of the entry of the judgment. Intervenor's claim that the court was correct to ignore another judge's order finding that plaintiff was not unjustly enriched at intervenor's expense, an order intervenor did not appeal, because the equitable doctrine of unclean hands "is a legal principle, not a cause of action," is without basis in the facts or the law.

A review of the record makes clear the court weighed the equities of intervenor's claims against plaintiff's right to equitable distribution without critical assessment of intervenor's good faith, without acknowledging that intervenor's claims against plaintiff had been dismissed, including the claim for unjust enrichment, and without ever hearing intervenor's testimony. The court never required intervenor to appear before it to testify to his claims under oath and thus never had the opportunity to assess his credibility before deciding that intervenor's claims rose higher than plaintiff's right to equitable distribution.

That circumstance makes the court's decision to award intervenor assets of over $3,000,000 on a claim of less than

$1,100,000, expressly permitting him to retain any sums he collects in excess of his judgment, while awarding plaintiff zero in equitable distribution, especially troubling. It is highly unlikely that intervenor could have obtained such relief in the Law Division, see Bell Atl. Network Servs., Inc. v. P.M. Video Corp., 322 N.J. Super. 74, 97-101 (App. Div. 1999) (noting New Jersey courts do not generally award lost profit damages for new businesses because of the inability to prove such profits with reasonable certainty), especially the right to liquidate the South Plainfield and Beijing properties, which intervenor produced no proof were purchased with his funds, see Flanigan v. Munson, 175 N.J. 597, 608 (2003) (explaining the test for imposition of a constructive trust requires a wrongful act which "must result in a transfer or diversion of property that unjustly enriches the recipient"); he should not receive greater relief simply because he intervened in the parties' divorce.

We think it plain from this discussion that the "equitable" award to intervenor the trial court fashioned cannot stand and must be remanded for reconsideration. We do not contend the court erred in seeking to apply the doctrine of unclean hands to this matrimonial action. As the Court many years ago observed in responding to criticisms of the doctrine's applicability to a divorce, "in many instances involving a rule of law or equity it

21

is not the rule but the application of the rule which raises the various problems." Untermann, 19 N.J. at 517. As the Court explained, "the principles upon which the maxim rests are equitable and, if properly administered with consideration of the total situation, are instrumental in the preservation of justice and the integrity of the courts." Ibid. The problem here is that the court looked only to defendant's conduct and plaintiff's but not intervenor's in weighing the equities; that error must be corrected on remand.

We offer the following for guidance on remand. Intervenor has a default judgment for approximately $1,100,000 against defendant only, plaintiff having obtained a final judgment dismissing intervenor's claims, which intervenor did not appeal. As far as we can tell, intervenor presented no proof that defendant used intervenor's funds to purchase either the South Plainfield property or the Beijing apartment. The default judgment against defendant limits its findings regarding any constructive trust to the marital residence. Thus there was no basis for the court to order conveyance of either the South Plainfield property or the Beijing apartment to intervenor. See Flanigan, 175 N.J. at 611 ("caution[ing] courts generally that a constructive trust is a powerful tool to be used only when the equities of a given case clearly warrant it"). The question for

the court on remand is to determine, viewing all the equities, whether plaintiff has a right to equitable distribution of some or all of the marital residence vis-á-vis both defendant and intervenor, whose default judgment against defendant impressing a constructive trust on that property to the extent of at least $636,000 was made expressly subject to plaintiff's right to equitable distribution.

The court must also determine plaintiff's right to equitable distribution of the South Plainfield property, in the event the bankruptcy trustee determined to abandon it, as well as the Beijing apartment. In that regard, we make two points about Sheridan. The first is that the parties to the divorce in that case were, for purposes of equitable distribution, in pari delicto, 247 N.J. Super. at 562, which, with the exception of the South Plainfield property, is not the case here. And second is the Sheridan court's belief that the sums over which it imposed a constructive trust would likely be consumed to satisfy the Sheridans' federal and state tax liabilities; meaning that the court leaving them "where the court found them" would not reward either one. Id. at 562, 566-67. Of course, when the parties to a divorce are not in pari delicto, the court could face a more difficult task in ensuring it does not "become an instrument of injustice," Rolnick, 262 N.J. Super. at 362

(quotation omitted), in attempting to equitably distribute the parties' assets. Care must be taken in applying the doctrine of unclean hands to "not worsen a thoroughly bad situation and give an economic advantage" to a party not deserving it. Untermann, 19 N.J. at 519.

Finally, should the court determine that liquidation of some or all of the properties is appropriate, the court must consider whether the remedy it chooses is a realistic one and take steps to assure the proceeds of any liquidation are properly accounted for. Judging from the responses of intervenor's counsel to the court's questions about enforcing a New Jersey judgment in China, the judgment the court fashioned could well have the perverse effect of leaving the largest asset in defendant's possession, a decidedly inequitable result. The court has other tools, notably the power in aid of litigant's rights, to compel compliance with its orders. See R. 1:10-3; R. 4:59-2(a); In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17-19 (2015) (discussing alternatives available to the trial court for enforcing a party's rights); see also Roselin v. Roselin, 208 N.J. Super. 612, 616 (App. Div. 1986) (same). It should further consider whether investing the power to liquidate assets belonging to the parties in an individual beyond the reach of the court's process and without requiring payment of the

proceeds into the Superior Court's or an attorney's trust account for final disbursement in accordance with the judgment is appropriate.

We reverse the equitable distribution award to plaintiff and those provisions of the divorce judgment granting intervenor exclusive power to sell or liquidate the three properties identified in the judgment and remand to the Family Part for reconsideration and further review. To the extent that the court's reconsideration of the equitable distribution award affects other financial aspects of the judgment, such as alimony, child support or counsel fees, it may reconsider such aspects of the judgment as well.

Reversed in part and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5063-15T3