**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2048-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JARRED D. WIGGINS, a/k/a J-LO
and JAY,

    Defendant-Appellant.

_____

Argued May 16, 2018 — Decided June 21, 2018

Before Judges Koblitz and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No.
13-02-0129.

Joshua D. Sanders, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender, attorney;
Joshua D. Sanders, Assistant Deputy Public
Defender, of counsel and on the brief).

Michele C. Buckley, Special Deputy
Attorney/Acting Assistant Prosecutor, argued
the cause for respondent (Michael A. Monahan,
Acting Union County Prosecutor, attorney; N.
Christine Mansour, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Jarred D. Wiggins appeals from his November 20, 2015 conviction after trial of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count one); fourth-degree unlawful possession of hollow-point bullets, N.J.S.A. 2C:39-3(f) (count three); and fourth-degree obstructing the administration of law by flight, N.J.S.A. 2C:29-1 (count four).[1] The trial judge sentenced defendant to a nine-year prison term with a fifty-four month period of parole ineligibility on count one, and one-year in prison on counts three and four to run concurrent to the nine-year sentence. Defendant appeals from the denial of his motion to suppress evidence. For the first time on appeal, he raises the argument that the flight charge given by the judge unconstitutionally shifted the burden of proof to defendant. He also maintains that his sentence was excessive. We affirm.

At the motion to suppress, the following testimony was given. On July 19, 2012, around 10:00 p.m. in a "well known high narcotics area where numerous arrests have been made," Officer Matthew Jakubowski of the Roselle Police Department began surveilling East

---

[1] Count two, third-degree receiving stolen property, N.J.S.A. 2C:20-7, was dismissed by the State prior to trial.

Ninth Avenue in Roselle in an unmarked undercover vehicle. He saw four individuals, one of whom was defendant, rolling dice outside defendant's residence. Jakubowski testified that during a half-hour period, on four occasions, he observed defendant receive a phone call, have a brief conversation, leave on a purple mountain bike, and return within two to three minutes. Based on his training and experience, Jakubowski thought the defendant was meeting buyers for narcotics transactions.

Jakubowski then saw defendant enter his home and exit within about five minutes, go over to his bicycle, lift up his shirt to place an unknown object "in the waistband of his pants, in the front," and then leave the area on his bicycle. Jakubowski radioed two officers to stop and detain defendant.

Officer John Lynn testified he observed defendant two blocks away and he and Sergeant Brian Byrnes stopped their marked patrol car and identified themselves as police officers, where upon defendant took off running. Officer Lynn pursued defendant on foot. During the chase, defendant reached into his waistband and discarded an object that made a "distinctive [] metallic sound" when it "hit the ground." After defendant was arrested, Officer Lynn went back to the area of the discarded object and found a loaded handgun with nine hollow-point bullets.

At trial, Officers Jakubowski and Lynn testified in accord with their earlier testimony given during the suppression hearing. The parties stipulated that defendant did not have a permit to either purchase or carry a handgun.

On appeal defendant raises the following issues through counsel:

> POINT I: THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE POLICE LACKED AN ARTICULABLE REASONABLE SUSPICION TO STOP MR. WIGGINS.
>
> A. THE POLICE LACKED AN ARTICULABLE REASONABLE SUSPICION TO CONDUCT AN INVESTIGATORY STOP.
>
> B. MR. WIGGINS'S ACTIONS DID NOT VALIDATE THE SEIZURE OF THE HANDGUN.
>
> POINT II: THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ISSUING AN UNCONSTITUTIONAL INSTRUCTION ON FLIGHT AS CONSCIOUSNESS OF GUILT.
>
> POINT III: MR. WIGGINS'S SENTENCE IS EXCESSIVE, UNDULY PUNITIVE, AND MUST BE REDUCED.

Defendant raises the following issues in his pro se supplemental brief:

> POINT I: THERE EXISTED NO REASONABLE SUSPICION TO STOP APPELLANT.
>
> POINT II: APPELLANT'S DEPARTURE FROM THE ROSELLE POLICE CANNOT FORM THE IMPETUS WHEREBY EVIDENCE SO SEIZED THEREAFTER BECOMES ADMISSIBLE DUE TO THE FACT THAT THE TERRY STOP OF APPELLANT WAS ILLEGAL AND THEREFORE THE

PRESUMED DERIVATIVE EVIDENCE, IF ANY, MUST BE SUPPRESSED AS A FRUIT OF THE POISONOUS TREE.

POINT III:  THE OFFICERS LACKED PROBABLE CAUSE TO ARREST APPELLANT AND HIS CONVICTIONS MUST BE VACATED.

POINT IV:  APPELLANT'S CONSTITUTIONALLY PROTECTED [RIGHT] TO A FAIR AND IMPARTIAL JURY WAS VIOLATED WHEN A BIASED JUROR WAS SEATED THAT BELIEVED THAT THE POLICE "DO NOT LIE" AND THEREFORE APPELLANT'S CONVICTIONS MUST BE VACATED AND A NEW TRIAL ORDERED.

POINT V:  THE LOWER TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY ON THE ADVERSE INFERENCES TO BE DRAWN FROM SGT. BYRNES, ET AL, FAILURE TO ACTIVATE HIS MVR.

POINT VI:  THE JURY SHOULD HAVE BEEN GIVEN A DURESS CHARGE AS AN AFFIRMATIVE DEFENSE TO THE "OBSTRUCTION" COUNT AND COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING AS MUCH.

I.

"When reviewing a trial court's decision to grant or deny a suppression motion, [we] 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'"  State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)).  "We will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'"  Ibid. (quoting Hubbard, 222 N.J. at 262).  "We accord no deference, however, to a trial court's interpretation of law, which we review de novo."  Ibid.

Both the federal and State constitutions protect citizens against unreasonable searches and seizures. <u>U.S. Const.</u> amend. IV; <u>N.J. Const.</u> art. I, ¶ 7. An investigatory stop, sometimes referred to as a <u>Terry</u>[2] stop, implicates constitutional requirements and must be based on "specific and articulable facts which, taken together with rational inferences from those facts" provide a "reasonable suspicion of criminal activity." <u>State v. Elders</u>, 192 N.J. 224, 247 (2007) (quoting <u>State v. Rodriquez</u>, 172 N.J. 117, 126 (2002)). "Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" <u>State v. Rosario</u>, 229 N.J. 263, 272 (2017) (alteration in original) (quoting <u>State v. Stovall</u>, 170 N.J. 346, 356 (2002)). The officer's "articulable reasons" or "particularized suspicion" is based on the officer's assessment of the totality of the circumstances. <u>State v. Davis</u>, 104 N.J. 490, 504 (1986).

We disagree with defendant that this case is similar to <u>State v. L.F.</u>, 316 N.J. Super. 174 (App. Div. 1998). There, the officer noticed the defendant place something in his pocket after following

---

[2] <u>Terry v. Ohio</u>, 392 U.S. 1, 16 (1968).

him down a dirt path in a high-crime area. We found that placing something in a pocket without other suspicious behavior did not give rise to a reasonable articulable suspicion. Id. at 179-81.

Nor is this situation like State v. Williams, 410 N.J. Super. 549 (App. Div. 2009). In Williams, the police observed defendant riding a bicycle in a housing complex. When defendant saw them, he put his hand in his pocket and pedaled away. No other facts indicated the defendant was involved with drugs or drug sales. We found the police lacked an objectively reasonable basis to stop defendant based on these observations.

This case is also different from State v. Tucker, 136 N.J. 158 (1994). There, the defendant was sitting on a curb when he saw the police and fled. As the police pursued him, he discarded packets containing cocaine. Our Supreme Court found no reasonable, articulable basis for the police to stop the defendant merely because he fled when he saw the police.

We "must decide if the officer's observations, in 'view of the officer's experience and knowledge, taken together with rational inferences drawn from those facts,' warrant a 'limited intrusion upon the individual's freedom.'" Stovall, 170 N.J. at 361 (quoting State v. Caldwell, 158 N.J. 452, 459 (1999)). "[D]ue weight must be given . . . to the specific reasonable inferences which [an officer] is entitled to draw from the facts in light of

his [or her] experience." Ibid. (alteration in original) (quoting Terry, 392 U.S. at 27). "A court must first consider the officer's objective observations," and then "must determine whether the evidence 'raises a suspicion that the particular individual being stopped is engaged in wrongdoing.'" Davis, 104 N.J. at 501 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

We are satisfied here that the totality of the circumstances provided reasonable articulable suspicion that defendant was engaging in criminal activity. The officer observed defendant at night in a high crime area respond to phone calls on his bicycle four times before he went into his house and came out, put something in his waistband and set forth again on his bicycle.

Even had the court been mistaken in determining that this observed activity constituted reasonable articulable suspicion of criminal activity, defendant did not stop when the police confronted him, and was convicted of obstruction of justice. Thus, discarding the gun was attenuated from the original cause for the stop. See State v. Williams, 192 N.J. 1, 10-11 (2007) (holding that regardless of the propriety of the stop, the defendant is obligated to submit to it, and obstruction will break the chain of the investigatory stop). We affirm the trial court's denial of defendant's suppression motion.

A-2048-15T1

Defendant did not testify and the judge gave the model flight charge without objection from defense counsel. "Pursuant to Rule 1:7-2, a defendant is required to challenge instructions at the time of trial or else waives the right to contest the instructions on appeal." State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010). "Where there is a failure to object, it may be presumed that the instructions were adequate." Ibid. (quoting State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003)). Nonetheless, we briefly consider this argument.

Because defendant failed to object to the jury charge, we apply a plain error standard, and reverse only if we find a "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous . . . to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Nero, 195 N.J. 397, 407 (2008) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).

"Flight from the scene of a crime, depending on the circumstances, may be evidential of consciousness of guilt, provided the flight pertains to the crime charged." State v. Randolph, 228 N.J. 566, 594 (2017). "If a defendant offers an explanation for the departure, the trial court should instruct the jury that if it finds the defendant's explanation credible, it

should not draw any inference of the defendant's consciousness of guilt from the defendant's departure." State v. Mann, 132 N.J. 410, 421 (1993).

The model jury charge pertaining to flight where a defendant offers an explanation for departure, which the judge read to the jury, states:

> There has been some testimony in the case from which you may infer that the defendant fled shortly after the alleged commission of the crime. The defense has suggested the following explanation . . . . If you find the defendant's explanation credible, you should not draw any inference of the defendant's consciousness of guilt from the defendant's departure. If, after a consideration of all the evidence, you find that the defendant, fearing that an accusation or arrest would be made against him/her on the charge involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all the other evidence in the case, as an indication or proof of a consciousness of guilt. It is for you as judges of the facts to decide whether or not evidence of flight shows a consciousness of guilt and the weight to be given such evidence in light of all the other evidence in the case.
>
> [Model Jury Charges (Criminal), "Flight" (rev. May 10, 2010).]

Model jury charges "should be followed and read in their entirety to the jury. The process by which model jury charges are adopted in this State is comprehensive and thorough; our model jury charges are reviewed and refined by experienced jurists and

A-2048-15T1

lawyers." State v. Docaj, 407 N.J. Super. 352, 370 (App. Div. 2009) (quoting State v. R.B., 183 N.J. 308, 325 (2005)). Although defendant did not testify, he was permitted via the flight charge to insert his version of why he left the scene. The judge stated:

> The defense has suggested the following explanation:
>
> during the encounter with Mr. Wiggins on July 19, 2012 the vehicle operated by Sergeant Br[i]an Byrnes traveled into the opposing lane of travel cutting off Mr. Wiggins as he rode his bicycle.
>
> Unlike the police vehicle depicted in S-14A and S-15A the vehicle, which was being operated by Sergeant Byrnes on July 19, 2012 had no emergency lights on the roof of the vehicle. Sergeant Byrnes did not utilize his emergency lights or siren in the encounter with Mr. Wiggins and by opening the door of the vehicle Sergeant Byrnes obstructed from view a portion of the lettering identifying the vehicle as a unit associated with the Roselle Police.

Defendant argues the model jury charge improperly shifts the burden of proof from the State to defendant. The charge conference was unfortunately not placed on the record. See R. 1:2-2 (regarding the necessity of recording all court proceedings). The defense explanation provided by the judge, however, also provided defendant with a defense to obstruction of justice, because, if believed, his departure from the scene was not with the purpose to obstruct or impair the administration of law. See N.J.S.A.

2C:29-1. Because the charge was so favorable to defendant and not objected to by him, we see no reason to consider defendant's novel argument with regard to burden-shifting.

## III.

Defendant argues his sentence is excessive because the judge ignored mitigating factor eleven, that imprisonment would entail an excessive hardship on defendant's children. N.J.S.A. 2C:44-1(b)(11). "The sentencing court is required to consider evidence of a mitigating factor and must apply mitigating factors that 'are amply based in the record.'" State v. Grate, 220 N.J. 317, 338 (2015) (emphasis added) (quoting State v. Dalziel, 182 N.J. 494, 504 (2005)). A sentencing court may not "simply decline to take into account a mitigating factor that is fully supported by the evidence." Dalziel, 182 N.J. at 505. But the trial court determines the appropriate weight that a mitigating factor should be accorded. Ibid.

During the sentencing hearing, defendant explained he was employed in Roselle prior to his incarceration. Defendant further explained that while he was employed, he was a source of financial support for his family. Defendant did not argue specifically that imprisonment would impose an excessive hardship on his dependents. The judge noted defendant lacked stable employment.

Defendant relies on State v. Mirakaj, 268 N.J. Super. 48 (App. Div. 1993), where we remanded for resentencing because the trial judge failed to find mitigating factor eleven. Mirakaj, 268 N.J. Super. at 51-52. At sentencing, the defendant argued that imprisonment would impose an excessive hardship on her children because her husband had abandoned them and fled the country. Id. at 51 n.1. The State did not dispute the presence of mitigating factor eleven. Ibid. The trial court failed to identify mitigating factor eleven, although it was "apparently applicable" based on the record. Id. at 51-52.

Unlike in Mirakaj, defendant did not argue that imprisonment would entail an excessive hardship for his family, but rather that he was a source of income for the family. Not all working defendants with children are appropriate for mitigating factor eleven.

Having considered the record, we conclude that the findings of fact regarding aggravating and mitigating factors were based on competent and credible evidence in the record, the judge correctly applied the sentencing guidelines enunciated in the Code, and the court did not abuse its discretion in imposing the sentence. State v. Cassady, 198 N.J. 165 (2009); State v. Roth, 95 N.J. 334 (1984).

Defendant's remaining arguments are without sufficient merit to require discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION