**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4937-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

COSON D. TAYLOR,

    Defendant-Appellant.

_____

Submitted January 6, 2021 – Decided March 30, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 18-02-0078.

Helmer, Conley & Kasselman, PA, attorney for appellant (Patricia B. Quelch, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven K. Cuttonaro, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Coson Taylor, appeals from a June 12, 2019 judgment of conviction after a jury trial. We affirm.

Defendant raises the following issues on appeal:

POINT I
THE ASSISTANT PROSECUTOR'S SUMMATION CONSTITUTED PROSECUTORIAL MISCONDUCT (not raised below).

POINT II
THE TRIAL COURT ERRED IN ADMITTING THE DEFENDANT'S STATEMENTS AND IN THE USE OF THE TRANSCRIPTS, REQUIRING A NEW TRIAL (partially raised below).

POINT III
THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING CERTAIN PHOTOGRAPHS INTO EVIDENCE AND, THUS, UNDULY PREJUDICING THE DEFENDANT.

POINT IV
THE TESTIMONY FROM THE DETECTIVE DESCRIBING THE CONTENTS OF SURVEILLANCE VIDEOS CONSTITUTED PLAIN ERROR (not raised below).

POINT V
DEFENDANT IS ENTITLED TO A NEW TRIAL DUE TO CUMULATIVE ERROR.

POINT VI
DEFENDANT'S SENTENCE IS EXCESSIVE.

On the evening of October 18, 2017, defendant Coson Taylor, as well as Damonte Smith, Kyree Hill and Voshon McCray drove to Devon Green's house in Ewing Township. Prior to departing, Hill had placed a three-foot duffle bag in the trunk of the car. Smith parked the car near Green's driveway where they waited for him to come home. After twenty minutes, Green and his friend, Ray Tift, pulled into Green's driveway.

Green and Tift walked up the driveway and sat down to smoke marijuana on Green's porch. Defendant, Hill, and Smith had exited the car and gone to the trunk where Hill retrieved a rifle from the duffle bag, and donned masks and gloves. The three walked toward the house while McCray waited in or near the car. After a brief encounter while attempting to rob Green, Hill pulled the trigger shooting him three times.

Defendant and Smith ran back to the car with McCray, and they picked up Hill, who was running down the block. As they drove away, the camera system in Officer Nicholas Lamson's police cruiser captured their vehicle travelling away from the scene. Lamson passed the vehicle but did not stop them. Hill told McCray he shot Green because he had "disrespected" him. They dropped defendant off at home and the four separated for the night.

A-4937-18

The Ewing Township Police Department found Green on the ground in a pool of blood. An officer called for an ambulance, but Green was pronounced dead. Ewing police officers took photographs of the scene, while Green's body was still there, and found three shell casings in the area. Police also canvassed the area to find witnesses and security camera footage, which they located from nearby homes, including a video showing the four men parking and exiting the car.

Detective Nancy Diaz was the lead investigator. After Theresa Cribb, one of Green's relatives who lived near him came forward, the Ewing police interviewed several people who provided information that led police to identify the suspects. Diaz and another investigator traveled to South Carolina and secured a statement from McCray who had returned to college. McCray implicated himself and the three others.

On November 19, 2017, defendant was brought to the prosecutor's office for questioning. Diaz read defendant his Miranda[1] rights prior to his interview. Defendant did not speak with detectives, initially invoking his right to remain silent, stating "so we done here?" But after his mother and grandmother spoke with him, defendant requested a second interview on his own prerogative.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Between the first and second interviews, the assistant prosecutor decided to bring charges against defendant for robbery, possession of a weapon and possession of a weapon for an unlawful purpose. Detective Diaz re-Mirandized defendant and told him about all his charges. He agreed to speak with them again. In his second recorded interview, defendant acknowledged his presence at the robbery, but maintained he thought the four went to buy drugs, not to rob Green.

Defendant's trial was severed from the other defendants on June 28, 2018. Both of defendant's interviews were played for the jury, entered into evidence and transcripts were provided to the jury. At trial, the State called Tift, as well as Cribb, who was inside the home on the evening of the shooting, several responding officers and the medical examiner, Laura Thoma, M.D., to testify. McCray and Detective Diaz also testified.

The jury convicted defendant of first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1); second-degree possession of firearms for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(1); and conspiracy to commit robbery, N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1(a)(1). Defendant's motion for a new trial was denied on June 6, 2019. Defendant was sentenced to a fifteen-year aggregate term, with an

eighty-five percent parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.  This appeal followed.

## I.

We review defendant's Points I, II and IV under a plain error standard because they were not raised below.  We first address defendant's assertion of prosecutorial misconduct.  "When a defendant fails to object to an error or raise an issue before the trial court, we review for plain error.  We may reverse on the basis of unchallenged error only if the error was 'clearly capable of producing an unjust result.'"  State v. Ross, 229 N.J. 389, 407 (2017) (quoting R. 2:10-2).  "The possibility of an unjust result must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'"  Ibid. (quoting State v. Williams, 168 N.J. 323, 336 (2001)).

Defendant argues the assistant prosecutor declared the defendant as guilty during summation.  "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented."  State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995); State v. Williams, 113 N.J. 393, 447 (1988)).

A-4937-18

When a defendant raises prosecutorial misconduct for the first time on appeal, our concern is "whether the remarks, if improper, substantially prejudiced the defendant['s] fundamental right to have the jury fairly evaluate the merits of [his or her] defense, and thus had a clear capacity to bring about an unjust result." State v. Johnson, (Johnson I), 31 N.J. 489, 510 (1960). Even where a prosecutor has been guilty of misconduct, reversal of a defendant's conviction is not necessary unless the conduct was so egregious that it deprived the defendant of a fair trial. State v. Wakefield, 190 N.J. 397, 437 (2007).

Defendant asserts multiple comments by the assistant prosecutor rise to this level. The comments include an inference that because McCray pled guilty pursuant to a cooperating plea agreement with the State, his testimony had to be truthful; McCray's comments noting he was sad about Green's death; and the prosecutor's request for the jury to find defendant guilty on all counts, given the evidence. First, although the assistant prosecutor did infer that McCray's plea agreement required cooperation and truthful testimony, he was stating a fact rather than personally endorsing McCray's credibility. Moreover, the comments defendant argues garnered sympathy for Green during a video playback were factual comments and we discern no prejudice.

We also reject defendant's arguments regarding the assistant prosecutor's summation when he stated:

> Ladies and gentlemen, when you consider all of the evidence in this case, Ray Tift, Theresa Cribb, police investigation, Voshon McCray's testimony, and don't ignore the defendant's statements, there is only one thing that makes any sense in this case, and that is to find the defendant guilty on all counts. And I ask you to return that verdict of guilty on all counts in this case. Thank you very much for your service.

"[I]f a prosecutor's arguments are based on the facts of the case and reasonable inferences therefrom, what is said in discussing them, 'by way of comment, denunciation or appeal, will afford no ground for reversal.'" State v. Smith, 167 N.J. 158, 178 (2001) (quoting Johnson I, 31 N.J. at 510) (internal citations omitted). The assistant prosecutor's final comments here did not violate this principle because they were made directly after delineating evidence.

## II.

We also reject defendant's arguments regarding his recorded statement. Defendant contends the audio recording of his statement was inaccurate and his statement was not made voluntarily, thus the judge erred by admitting them into evidence. We review this argument under an abuse of discretion standard based on the court's rulings. An "abuse of discretion only arises on

8

demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Defendant argues there were audibility issues that prevented the recorded interviews from meeting the Driver standards. State v. Driver, 38 N.J. 255, 287 (1962) requires:

> [T]he speakers should be identified and it should be shown that (1) the device was capable of taking the conversation or statement, (2) its operator was competent, (3) the recording is authentic and correct, (4) no changes, additions or deletions have been made, and (5) in instances of alleged confessions, that the statements were elicited voluntarily and without any inducement.

Having reviewed the videos, we conclude the trial judge did not abuse his discretion by admitting the statements. This is because the State satisfied the first four Driver factors and the State's proffered transcript of the interviews adequately reflects the conversations.

Further, the transcript of the pretrial hearing during which the video was played in court, contains significant portions that are described as

9

indiscernible. We agree, portions of the transcript were not complete. However, the video was shown to the jury and the judge instructed the jury to focus on the videos and use the transcripts as guides, a procedure to which both parties consented. Defendant failed to present a single instance where the State provided transcript does not match the videos.

Next, the admissibility of defendant's statement hinges on when defendant asked if he was "done here" followed by continued questioning. Crucially, there was a window between defendant's first interview, before speaking with his mother and grandmother, and his second, when he requested to continue the interview himself.

The State admits the officers continued the interview after defendant made an arguable Miranda invocation by asking: "so we done here?" But the court found the invocation was ambiguous, stating "[w]hether they had a duty to end the interview right away is one argument but it is also just as clear that you could interpret what Mr. Taylor said as a question, are we done here, as opposed to a statement, I'm done." Regardless, the detectives ended the interview. The parties and court agree defendant's family members spoke with defendant. Thereafter, defendant's second interview was markedly different in

tone, and as noted above, defendant re-initiated the interview on his own volition.

Accordingly, we consider this argument under the State v. Johnson, (Johnson II), three-part taint-attenuation test. 118 N.J. 639, 653 (1990). To determine whether any taint was attenuated we must address (1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct. Ibid. (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975)).

Johnson II's first question focuses on the temporal proximity between the illegal conduct and the challenged evidence. Ibid. Both parties agree this is the least determinative factor. State v. Worlock, 117 N.J. 596, 622-23 (1990). And generally, our question is whether the confession was "sufficiently an act of free will to purge the primary taint." Worlock, 117 N.J. at 621 (quoting Wong Sun v. United States, 371 U.S. 471 (1963)). We agree that it was.

Defendant originally accompanied detectives for questioning on November 19, 2017. After the first interview, where he ambiguously asserted his right to remain silent, his stepfather then called, and his family came to speak with him. In the meantime, Detective Diaz and the assistant prosecutor

11

decided to bring charges against defendant while he spoke with his family. Shortly after, defendant re-initiated discussions and continued the interview with the detectives. That being so, there was no significant break, but there was also no significant taint from the detectives failing to clarify his invocation.

Next, and particularly applicable here, is the presence of intervening circumstances. Johnson II, 118 N.J. at 650. There is no question defendant spoke with his family and decided to comply with the detectives afterwards. Johnson II instructs courts to focus on intervening circumstances, as it can be the most important factor in determining exclusion. Ibid. Focusing on a break in the chain of events is crucial and may include consultation with counsel. Ibid. (citing Brown, 422 U.S. at 611). But instead of legal counsel, consulting with his family broke the chain of events here, as the tenor of the interview changed drastically. Further, the detectives read him his rights again. See State v. Chippero, 164 N.J. 342, 355 (2000) (finding the presence or absence of Miranda warnings are persuasive, but not dispositive). The trial court found:

> I'm satisfied [that] there's [sic] beyond a reasonable doubt that . . . defendant reinitiated contact with police after he met with family. Police permitted the meeting but . . . defendant made his own choice. Letting . . .

12

> defendant meet with his family was not in my judgment the functional equivalent of further interrogation by the police. The family were not agents here. And I think that argument was made expressly by defense counsel. They were not agents, and there was no element of compulsion here.

Because the family were not agents of the police, and because defendant was eager to accept his <u>Miranda</u> warnings, these positive intervening events weigh heavily towards dissipating any taint.

Last, the flagrancy and purpose of the police misconduct should be considered. <u>Johnson II</u>, 118 N.J. at 658. Here, the only misconduct was failing to inquire as to what defendant meant when he asked, "so we done here" and continuing questioning. The court found:

> At minimum then, in my judgment, the first time the defendant uses the phrase, so we done here, the police had an obligation to clarify. They did not. And, as a result, in my judgment, the failure to clarify and the failure to either stop the interrogation there entirely or to a bare minimum ask questions as to what the defendant meant. Admittedly, so we done here, can be a question or it can be a statement. And, the [detectives] had an [obligation] to clarify . . . defendant's position, and they did not. So, their failure to do so, again in my estimation, requires suppression of [every] statement made by . . . defendant in the first interrogation past, so we done here.

13

So under either standard, as this argument was partially raised below, the court outlined ample and competent support for his determination that the second session was free and voluntary, while everything past "so we done here" from the first statement was inadmissible.

Thus, under the three Johnson questions, the majority of defendant's first interview and his entire second interview were voluntary and admissible.

III.

Next, defendant argues that certain images of the crime scene were unduly prejudicial. Multiple photos showing Green in a pool of blood on his porch, some directly, some indirectly, were shown to the jury. Defendant argues he attempted to stipulate to Green's death, but the State refused. The trial judge found the probative value of admitting the photos was not outweighed by a risk of prejudice. While defendant maintains the shooter was known and it was undisputed Green was shot, the State's use for the photographs was to prove the elements of defendant's charges beyond a reasonable doubt, which is not only allowed, but necessary.

Indeed, we will not reverse the trial court in the absence of a palpable abuse of discretion. State v. Johnson, (Johnson III), 120 N.J. 263, 297 (1990). These photographs show the physical force necessary to convict defendant of

14

robbery, and its associated felony murder, coupled with witness testimony. See State v. Abdullah, 372 N.J. Super. 252 (2004). Our Supreme Court has said "[t]he presence of blood and gruesome details are not ipso facto grounds for exclusion." State v. Morton, 155 N.J. 383 (1998) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 500 (1994)).

Even if we agreed with defendant regarding exclusion, reversal is only proper when defendant was substantially prejudiced. State v. McDougald, 120 N.J. 523, 583 (1990). But defendant was not convicted of felony murder, thus we reject his contention that introducing gruesome photographs of Green's body was substantially prejudicial, as the only plausible prejudice did not occur.

## IV.

Defendant asserts it was plain error to have allowed Detective Diaz to narrate the details of the vehicle she observed from the passing officer's in-car camera, along with the surveillance footage she reviewed and commented on. Diaz was asked to compare what she observed from each video:

> State: Did you compare this surveillance video against Officer Lamson's video?
>
> Diaz: I did.

15

State: And what did you make -- what observation did you make?

Diaz: There's a little wing on the back of the vehicle on the top roof. The molding on the bottom is all black. The side mirror's all white. There's a slant in the window in the back, and I believe the plate is in the middle kind of like in the center between the molding and the frame of the front of [the] vehicle.

Defendant contends this identification of the vehicle was improper lay witness testimony, which would usurp the jury's duty. He cites State v. Lazo, 209 N.J. 9, 12-13 (2012), where the State chose to have an officer testify, because he included a photo of defendant in a photo array, as he believed it matched the image drawn by a sketch artist. However, Lazo is not analogous to this situation because Diaz did not identify the vehicle as carrying defendant and explained her reason for reaching such a conclusion. She noted the similarities between the in-car video and surveillance videos but did not conclude it necessarily carried the defendant.[2]

---

[2] We note, on January 21, 2021, during the pendency of this appeal, our Supreme Court decided State v. Singh, 245 N.J. 1 (2021). In Singh, the Court considered whether the trial court impermissibly permitted a detective to narrate a surveillance video, noting identifiable characteristics of Singh's sneakers, constituted plain error under N.J.R.E. 701. Id. at 4. The detective also noted "the defendant" was in the video wearing the sneakers. Id. at 4-5.

Singh argued the sneakers were admitted into evidence, so there was no need for the detective to identify them. Id. at 19. But the Court noted N.J.R.E. 701

## V.

Finally, defendant claims his sentence is excessive, especially considering the sentences of his two former co-defendants. He also argues the trial court failed to properly account for, and weigh, the applicable aggravating and mitigating factors.

We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). Moreover, our review of a sentence is limited. State v. Miller, 205 N.J. 109, 127 (2011). Our basic responsibility is to assure that the aggravating and mitigating factors found by the judge are supported by competent, credible evidence in the record. State v. Bieniek, 200 N.J. 601, 608 (2010).

With these principles in mind, we conclude defendant's sentence is not excessive. Primarily, defendant takes exception to the court's failure to find

---

only requires the "witness's testimony must 'assist in understanding the witness'[s] testimony or determining a fact at issue.'" Ibid. (citing N.J.R.E. 701). In this case, Diaz did not testify defendant was in the vehicle; she only noted features of the vehicle. Although the Court's holding in Singh was not implicated, here, even if it was, "the jury was free to discredit Detective [Diaz]'s testimony and find that the [vehicle described was] dissimilar to [the one] on the surveillance video." Id. at 20 (citing State v. LaBrutto, 114 N.J. 187, 199 (1989) ("rejecting the argument that testimony based on an officer's first-hand perceptions as to a point of impact should be excluded if the jury has the means to reach its own conclusions about the point of impact")).

defendant's youth as a mitigating factor and failing to find mitigating factor twelve for cooperating with the police.

Under N.J.S.A. 2C:44-1(b)(13), a court may consider whether "[t]he conduct of a youthful defendant was substantially influenced by another person more mature than the defendant." Defendant fails to enunciate how his co-defendants or anyone else affected his decision to participate in the robbery. Rather, he argues that being nineteen when the crime occurred meant he was youthful enough to deserve leniency.

Defendant cites several cases to support the mitigation a defendant's youth calls for. However, the cases themselves delineate between those under eighteen years old and those above eighteen. See Roper v. Simmons, 543 U.S. 551, 569 (2005) (explaining how the differences in consideration appear between juveniles under eighteen and adults). While the exponential effects of sentencing and the judicial process are felt when a citizen turns eighteen, defendant was at no point a juvenile, or even more, or less mature than the other three defendants.

Second, defendant asserts an abuse of discretion by the trial court for failing to find mitigating factor twelve, which evaluates the willingness of the defendant to cooperate with law enforcement authorities. N.J.S.A. 2C:44-

18

1(b)(12). Here, the court did consider defendant's cooperation and concluded it was insufficient to trigger that mitigating factor and rejected it because factor twelve requires more than a police interview and voluntary testimony against his co-defendants. See State v. Dalziel, 182 N.J. 494 (2005).

Defendant also contends his co-defendant's shorter sentences suggests a lack of uniformity. However, the plea agreements his co-defendants entered occurred after defendant had been sentenced, and Hill and Smith pled guilty to different crimes.

Based on our review, the court did not violate the sentencing guidelines and the record amply supports his findings on aggravating and mitigating factors. The sentence is clearly reasonable and does not shock the judicial conscience. We do not address the defendant's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4937-18