# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1668-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.J.J.,

    Defendant-Appellant.

_____

Submitted January 10, 2022 – Decided March 4, 2022

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-10-1377.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent (Maura K. Tully, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a jury trial, defendant was convicted of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(l) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(l) (count three). The court sentenced defendant to a thirty-year custodial term on count one, ten years on count two, and five years on count three, to be served concurrently, subject to an 85% parole ineligibility period pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, along with five years of parole supervision on count one. The court also assessed applicable fines and penalties, imposed a special sentence of parole supervision for life, and required defendant to comply with restrictions of Megan's Law, N.J.S.A. 2C:7-1 to -23.

Before us, defendant raises the following arguments, to which we limit our discussion:

POINT I

THE IMPROPER ADMISSION OF M.B.F.'S (Mary)[1] UNRELIABLE OUT-OF-COURT STATEMENTS REGARDING SEXUAL ABUSE DENIED DEFENDANT THE RIGHT TO DUE PROCESS AND A FAIR TRIAL.

---

[1] We use initials and fictitious names to protect the privacy of the victim and her family members. R. 1:38-3(c)(12).

2                                                        A-1668-19

POINT II

THE AGGREGATE SENTENCE IMPOSED, A THIRTY-YEAR STATE PRISON TERM SUBJECT TO NERA, WAS EXCESSIVE, UNDULY PUNITIVE, AND MUST THEREFORE BE REDUCED.

POINT III

THE COURT ERRED IN FAILING TO MERGE THE ENDANGERING COUNT WITH THE SEXUAL ASSAULT COUNT.

For the following reasons, we affirm defendant's convictions and sentence but remand for the court to correct the Judgment of Conviction (JOC) to reflect the merger of count three into count one.

I.

Defendant was indicted after Mary, his then six-year-old granddaughter, informed her ten-year-old aunt and grandmother, and later Detective Joshua Rios, a child interview specialist in the Special Victims Unit for the Monmouth County Prosecutor's Office, in a recorded forensic interview, that defendant sexually assaulted her on two occasions between July and August 2018. The State sought a pretrial ruling deeming Mary's out-of-court statements to Detective Rios admissible under the "tender years" exception. See N.J.R.E. 803(c)(27). The court conducted an evidentiary hearing, after which it issued a written opinion and conforming order granting the State's motion, provided

Mary testify at trial. The court reasoned that Mary's statements were trustworthy because she understood the difference between the truth and a lie, Detective Rios did not ask leading questions, and Mary's answers "truly reflected the product of her own recollection." Defendant was thereafter tried where the following facts were revealed.

In the summer of 2018, defendant lived in a transitional home in Asbury Park for men recently released from prison. During this time, defendant often visited his daughter S.F. (Sherry), at her nearby apartment, where she lived with Mary and her three other children. Sherry testified that her father came over "often" and she "never had to worry about him and [her] kids" because she trusted him. She testified that the kids loved their "Pop-Pop," and he would often bring toys and food to the house. Sherry's mother, L.F. (Lori), also testified to the family's close relationship and stated that defendant was welcome at Sherry's home on a "just come and go" basis.

Mary testified at trial and stated that the first incident occurred while defendant touched her "private parts" over her shorts while visiting at her family's apartment. She stated that defendant "touched me in a place where he wasn't supposed to touch me" while she was sitting on his lap in the living room. Defendant stopped when he heard someone walk into the house.

A-1668-19

Mary further testified that defendant returned to her home a second time, and again touched her "private part," but this time "slipped his hand" under her pants and "put his hand in [her] private part." Mary stated that "it didn't feel right," so she excused herself to go to the bathroom, but instead went upstairs to watch television with her siblings.

At trial, the prosecution played a redacted version of Mary's August 7, 2018 videotaped interview with Detective Rios. During that interview, Mary told Detective Rios that defendant put his finger "through [her] potty part" both times and told her "[d]on't tell nobody." Later in the interview she clarified this statement, and explained that defendant's hand only touched the top of her "potty part" the first time, when he "trie[d] to put [her] by his potty part" as she sat on his lap.

Describing the second incident to Detective Rios, Mary stated that defendant "laid [her] down on the couch and told [her] to open [her] legs," but when she didn't, he "unbuckled [her] pants" and "did it harder" so she "held [her] scream in." She told Detective Rios that defendant's hand "went in" the second time and, using an anatomical diagram, Mary indicated that defendant also touched her buttocks.

A-1668-19

As noted, absent her initial statement in the interview, Mary stated to Detective Rios that defendant only touched her vaginal area "on top" the first time, but digitally penetrated her vagina the second time. At trial, however, she testified that she felt defendant's hand "on top" of her vagina the second time, and when counsel asked, "Do you remember if [defendant's hand] went in or no?" she responded, "no."

In her interview with Detective Rios, Mary also stated that the first person she told about these incidents was her grandmother, Lori. She testified at trial, however, that she first told her ten-year-old Aunt G., who in turn told her own mother, Lori. Lori corroborated this testimony, stating that she found out through her youngest daughter. After she spoke with Lori, Mary told Detective Rios that she also discussed the incidents with her mom, and found out defendant had also allegedly assaulted her Aunt N. During the interview, Mary stated, "He did it to my aunt once and he did it to me twice." This statement was redacted from the video of the interview played at trial.

Sherry testified that after Mary told her about the incidents, Sherry called defendant to "ask[] him what was going on," but when he denied it, she called the police. She further explained that after she did so, she had only "on and off" conversations with Mary about defendant's conduct, but at that point, there was

A-1668-19

"nothing else to talk about." Lori denied speaking with Mary about the incidents at any point after her interview with Detective Rios.

Defendant categorically denied the allegations. He testified that he did not place Mary on his lap because he had not been in his grandchildren's lives for several years, and he felt it was "inappropriate for any stranger to put a kid on their lap." He also stated that he would hug the children when he arrived at the house and when he left, but he did not physically interact with them otherwise.

After considering the testimony of Mary, Sherry, Lori, Detective Rios, defendant, and an employee of the transitional home where defendant was living, as well as the recorded interview and other evidence, the jury found defendant guilty on all counts. At sentencing, the court found three aggravating factors applicable under N.J.S.A. 2C:44-1(a): "the risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3) (aggravating factor three); "the extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted," N.J.S.A. 2C:44-1(a)(6) (aggravating factor six); and "the need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9) (aggravating factor nine). The

court also found no mitigating factors and rejected defendant's request to merge the sexual assault and endangering convictions. This appeal followed.

## II.

In his first point, defendant contends the court erroneously admitted Mary's statements to Detective Rios during her videotaped interview as an exception to the hearsay rule under N.J.R.E. 803(c)(27), and therefore violated his due process rights. We find no merit to this argument. The trial court applied the correct standards, and properly exercised its discretion, State v. Scharf, 225 N.J. 547, 575 (2016), in determining that the statements were sufficiently trustworthy to be admitted under the hearsay exception described in N.J.R.E. 803(c)(27).

Hearsay, of course, is "a statement that the declarant does not make while testifying . . . offer[ed] in evidence to prove the truth of the matter asserted in the statement," N.J.R.E. 801(c), and is inadmissible unless the rules provide an exception, N.J.R.E. 802. N.J.R.E. 803(c)(27) allows the admission of a statement made by a child under the age of twelve "relating to sexual misconduct" on a finding of three conditions. The first is the requirement that the proponent give notice of an intention to use the statement, N.J.R.E. 803(c)(27)(a), which was satisfied here. The second requires that the judge

A-1668-19

conduct a hearing, pursuant to N.J.R.E. 104(a) – as occurred here – and, before admitting such a statement, determines there is a "probability that the statement is trustworthy" "on the basis of the [statement's] time, content and circumstances." N.J.R.E. 803(c)(27)(b). The third requires, as pertinent here, that the child testify. N.J.R.E. 803(c)(27)(c).

In this case, the focus is on the second condition and whether the judge properly concluded that the statements were trustworthy. Defendant argues Mary's videotaped statements were untrustworthy because they were internally inconsistent and "made under circumstances that created undue suggestiveness." Specifically, he maintains that Mary's awareness of a similar claim made by her Aunt N., and her conversations with her mother and her grandmother prior to her interview with Detective Rios, undermine the trustworthiness of her allegations. We disagree.

Our Supreme Court relied on Idaho v. Wright, 497 U.S. 805, 821-22 (1990), in describing the relevant factors as "spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate." State v. P.S., 202 N.J. 232, 249 (2010); see also State in Interest of A.R., 234 N.J. 82, 103 (2018). The judge thoroughly considered these factors.

A-1668-19

There is no dispute the age requirement under Rule 803(c)(27) has been met, as Mary was six years old when she was interviewed, and the age of the child at the time of the statement, not the time of trial, controls. State v. Roman, 248 N.J. Super. 144, 152 (App. Div. 1991). Moreover, given the Rule 104(a) preliminary hearing prior to trial, defendant had ample prior notice of the State's intention to introduce her statements. Further, Mary testified at trial and defendant had the opportunity to cross-examine her. Thus, the only disputed condition of admissibility on appeal is the trial court's determination of the trustworthiness of Mary's statements during the forensic interview with Detective Rios.

In finding trustworthy Mary's statements to Detective Rios, the court described the circumstances of the interview, noting that it had reviewed the full recording and considered Detective Rios' testimony at the pretrial hearing. The court found Detective Rios to be credible, explaining that his testimony was "very straightforward" and "candid." The court also concluded that his interview techniques, including his use of an anatomical diagram and his open-ended questions, were non-confrontational and he did not suggest or imply answers. Rather, he used "either-or" questioning when he needed to direct Mary.

The court further concluded that Mary had no motive to fabricate the allegations and she provided "intricate details" about the first encounter. The court also rejected defendant's argument that Mary's statement had been influenced by family members and found no reason to suggest that her "mental state would call into question the reliability of her statement."

Finally, defendant argues that Mary's choice of language in the recorded interview, such as her use of the word "situated" and her statement that defendant "does not treat his granddaughters . . . like kids," demonstrates potential manipulation by adults. Defendant contends Mary's mixed usage of age-appropriate terms with these more advanced terms and phrases suggests she was influenced by her family members. While age-inappropriate sexual terminology may militate against the reliability of a child's allegations, see Idaho v. Wright, 497 U.S. 805, 821 (1990), we note Mary largely used age-appropriate language and consistently referred to her vagina with the terms "potty part" or "private part."

For these reasons, and substantially for the reasons set forth by the court in its written decision after the N.J.R.E. 104(a) hearing, we reject defendant's first point. We are satisfied that there was sufficient credible evidence on the record to support the trustworthiness of Mary's allegations. In doing so, we have

11

also considered Mary's trial testimony against her recorded statement, and while we acknowledge certain inconsistencies, we are satisfied that her statement and her testimony, which was subject to cross-examination and ultimately consideration by the jury in any event, was largely consistent in that she steadfastly maintained that defendant assaulted her on two occasions. Additionally, we note that the court only allowed the redacted version of Mary's statements to be played for the jury, ensuring that the portion of the interview discussing Mary's allegations regarding Aunt N. had been redacted, as agreed upon by counsel.

## III.

Defendant also argues his thirty-year prison sentence was excessive and we should therefore remand the matter for resentencing. He further contends that the court committed error in failing to apply mitigating factor eight and by improperly ascribing significant weight to aggravating factors three and nine without necessary factual findings. We disagree with defendant's arguments and are satisfied that defendant's sentence was consistent with the Code of Criminal Justice. Further, we conclude there was significant support in the record for the court's application of the aggravating factors and its refusal to apply any mitigating factors.

12

We apply a deferential standard of review to a trial court's sentencing decision. State v. Grate, 220 N.J. 317, 337 (2015); State v. Fuentes, 217 N.J. 57, 50 (2014). We must affirm a sentence unless: 1) the trial court failed to follow the sentencing guidelines; 2) the court's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or 3) "the [court's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." Fuentes, 217 N.J. at 70 (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). So long as a sentencing judge appropriately identifies and balances the mitigating and aggravating factors supported by the credible evidence in the record, and explains how he arrived at the sentence, a reviewing court owes the trial court's decision substantial deference. State v. Case, 220 N.J. 49, 65 (2014).

As noted, the court applied aggravating factors three, six, and nine, and found no mitigating factors. In doing so, the court specifically stated that it had "reviewed the presentence investigation . . . on at least two occasions from

13

cover-to-cover." The court also highlighted defendant's refusal to submit to an evaluation by Avenel Adult Diagnostic Treatment Center and explained that defendant had "more than one opportunity" for that evaluation. The court concluded that the three aggravating factors outweighed the non-existing mitigating factors and imposed "slightly more than the minimum mandatory sentence" because defendant's "conduct warrant[ed] some additional time."

Defendant maintains that the sentencing court's failure to apply any mitigating factors was improper, and it should have considered mitigating factor eight, N.J.S.A. 2C:44-1(b)(8), that "defendant's conduct was a result of circumstances unlikely to recur." Defendant argues such a conclusion was not based upon the evidence in the record, as he "had not committed any prior sex offenses and there was no reason to think he would continue."

First, we note that at the sentencing proceeding, defendant's counsel failed to identify any specific mitigating factor, despite an explicit request by the court for him to do so. The court nevertheless conscientiously addressed each of the thirteen mitigating factors and explained why each was inapplicable.

In any event, we disagree with defendant's argument before us that the court erred in failing to apply mitigating factor eight. That mitigating factor applies when a defendant accepts responsibility and shows a willingness to

remove himself or herself from circumstances that may lead to similar unlawful conduct. State v. Rice, 425 N.J. Super. 375, 382-83 (App. Div. 2012). Along with his refusal to participate in an evaluation at Avenel, defendant's continued denial of responsibility does not support a finding that the circumstances are unlikely to recur, but rather, negates it. For these reasons, and for the reasons noted by the court, the trial court's rejection of mitigating factor eight was not an abuse of discretion.

We also disagree with defendant's argument that the court erred in applying aggravating factors three and nine. Specifically, defendant contends that the application of aggravating factor three was improper, as he had not been convicted of any earlier sex offenses and the State did not present any evidence that defendant needed "sex offender specific therapy or [was] otherwise at risk for this particular type of recidivism."

The application of aggravating factor three was not an abuse of discretion as there was ample evidence to support such a conclusion, and the trial court fully explained its reasons on the record. As the court noted, the lack of evidence on this issue was due to defendant's failure to participate in an evaluation by the Adult Diagnostic and Treatment Center. The court concluded defendant was not "unlikely to commit another offense" based on the "facts and circumstances of

15

this case," and defendant's "lengthy" criminal record, which the court noted it considered after twice reviewing the presentence report "cover-to-cover." See, e.g., Dalziel, 182 N.J. at 502 (finding "the extent of a defendant's prior record" supported the sentencing court's conclusion regarding his risk for re-offense). The court also highlighted that defendant had been on parole at the time of the offenses for which he was convicted.

Finally, defendant argues aggravating factor nine should not have been applied "absent a unique or special need for deterrence that differentiates a given case from others involving the same or a similar offense." Again, we disagree that the court erred in applying this aggravating factor.

Although the court's reasoning for applying aggravating factor nine could have been more specific and robust, it is clear from our review of the entire sentencing transcript that the court grounded its decision to apply aggravating factor nine on defendant's lengthy criminal record, spanning over forty years, and which included previous convictions for terroristic threats, simple assault on a fourteen-year-old girl, and various drug charges. See State v. Pillot, 115 N.J. 558, 565-66 (1989) (concluding that although the sentencing court's statement of reasons could have been "more complete," it was "possible in the

context of [the] record to extrapolate without great difficulty the court's reasoning").

Here, the sentencing judge also presided over the trial and was well aware of the facts and circumstances surrounding defendant's sexual assault of his then six-year-old granddaughter. Based on that record, and the facts underlying defendant's conduct as detailed during his trial, the application of aggravating factor nine was clearly applicable as the need the to deter defendant specifically from committing another assault on a minor was clearly necessary, as was the need for general deterrence.

IV.

In defendant's third and final point, he argues the trial court erred when it did not merge the sexual assault and endangerment counts, despite defense counsel's request for merger at sentencing. The court reasoned that the endangering offense consisted of separate and distinct elements, and the incidents occurred on two separate days, and the counts therefore should not merge. On this point, the State concedes that defendant's conviction on count three should have been merged with count one under State v. Still, 257 N.J. Super. 255, 259-60 (App. Div. 1992). We agree with the parties and remand for the court to correct the JOC accordingly.

To the extent we have not specifically addressed any of defendant's arguments, it is because we have considered those contentions of insufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed in part and vacated and remanded in part for the court to correct the JOC to reflect the merger of count three into count one.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION